## DENNIS GARY COOPER *v.* STATE OF MARYLAND

[No. 141, September Term, 1979.]

*Decided November 7, 1979.*

The cause was argued before GILBERT, C. J., and MORTON and WILNER, JJ.

*John W. Sause, Jr., District Public Defender,* for appellant.

*Valerie A. Leonhart, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, Donaldson C. Cole, Jr., State's Attorney for Cecil County,* and *Paul S. Podolak, Assistant State's Attorney for Cecil County,* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The appellant, Dennis Gary Cooper, in this Court assails the judgment of the Circuit Court for Cecil County in an effort to have that judgment reversed. To accomplish that end, Cooper has raised half a dozen issues, ranging from a defective criminal information in the first instance to erroneous advisory jury instructions.

## THE FACTS

Cooper was tried before a jury on a four-count indictment filed March 20, 1978, charging larceny of goods "of the value of One Hundred Dollars and upwards." The indictment was in the normal form and as such contained the usual counts of receiving, petit larceny and receiving goods under the value of one hundred dollars. Additionally, the State's Attorney for Cecil County, lodged a Criminal Information [1] against Cooper. It was filed on July 18, 1978 and contained two counts. The first charged Cooper with the common law offense of misprision of felony.[2] The second count, which is the subject of this appeal, asserted that:

"COOPER . . . willfully, unlawfully and knowingly

---

[1] A Criminal Information is "a charging document in which the accusation is made by the State's Attorney. . . ." Md. Rule 702 d.

[2] The Court of Appeals, in Pope v. State, 284 Md. 309, 396 A.2d 1054 (1979), held that the common law offense of misprision of felony was no longer viable in Maryland. In fairness to the State's Attorney for Cecil County, it should be noted that this Court had earlier held that the common law crime of misprision was still an offense in this State. Pope v. State, 38 Md. App. 520, 382 A.2d 880 (1978). The Court of Appeals's decision, postdating the trial in the instant case by four months, reversed our holding. Pope v. State, *supra.*

did aid, harbor and assist Roy Dean Duncan after the
commission of two felonies, (1) Grand Larceny, and
(2) Receiving Stolen goods over $100.00, and did so
with full knowledge of said crimes. . . ."

The jury found verdicts of not guilty as to each count of
the indictment and as to the first count of the Information.
Cooper was found guilty, however, of the second count of the
Information, aiding and abetting Duncan, "after the
commission of two felonies." The trial judge imposed a
sentence of eight years imprisonment but suspended the last
year of that term and ordered that Cooper be placed on
probation for a period of five years. Of course, the
probationary period would not commence until the expiration
of the period of incarceration.[3]

From the record it is apparent that Cooper pleaded guilty
to the unrelated offense of forgery. That plea was entered
some three months after trial in the instant case. The
sentence imposed was exactly the same as that in the matter
now before us and was made concurrent therewith. No appeal
was entered from that sentence.

Even if Cooper were to win, yet he would lose, because, as
applied to him, our striking down of one identical concurrent
sentence would leave Cooper substantially where he is, *viz,*
incarcerated for a period of eight years with the last year
suspended, and Cooper's then being placed on probation for
an additional five-year period.[4] Thus, Cooper's "victory," if
achieved, would be akin to that of Pyrrhus, King of Epirus
(319-272 B.C.) [5] and, consequently, no victory at all except
possibly to allow parole to be more favorably considered.
Under the circumstances, our subsequent discussion is
largely academic as applied to Cooper.

---

3. Such a sentence would seem to pose some difficulty at a later stage if,
as here, the last year is suspended, and the appellant placed on probation at
the expiration of the first seven years. What happens should he be released
on parole at the end of two years? Does he then continue on parole until the
end of the seventh year when he goes on probation for another five years?
Is he on parole at the same time he is on probation?

4. *But see* Stone v. State, 43 Md. App. 329, 405 A.2d 345 (1979).

5. Pyrrhus's victory over the Romans at Asculum in 279 B.C. was won at
such a great cost that it was tantamount to not winning, hence, the term
"Pyrrhic victory." Morris, *Dictionary of Word and Phrase Origins,* 470-71
(1977).

From the record it is apparent that Roy Dean Duncan stole certain personal property belonging to James R. West, from a "furniture type truck" which was also owned by West. The property, described as "stuff" by West, consisted in part of "Rogers Stainless Steel Silverware [*sic*], knives, forks and spoons," some "sets of steak knives," Corning ware, ladies' wallets, an FM-AM radio, two deep fryers, a hot plate, costume jewelry, an electric clock, lawn chairs, and a "hot dog cooker." West's cost of the items taken totaled $588.

Duncan pleaded guilty to the theft and was sentenced to a term of two years.[6]

Apparently, after the burglary, Duncan went to Cooper's home, a trailer. There he talked to Cooper's wife, Wanda, and obtained Wanda's permission to stay in the trailer provided he gave "her half the things that . . . [he] got out of the truck." Duncan denied that he talked to Cooper before the crime. Duncan did not, according to his testimony, tell Wanda how he had obtained the items. He said that he went to Cooper's trailer "because . . . where I was staying the man told me I'd have to move out because he was going to do something." Duncan testified that he gave some of the items to Lou Ann Bakeoven, a friend with whom he had been living. Cooper went with him when he took the items to Lou Ann's. Duncan denied that he sold any of the stolen property, but he gave "it all away." Cooper was not living in the trailer according to him and Duncan, although his wife did reside there. Duncan stayed in the trailer for "about a month and a half." Cooper was in and out of the trailer as he and his wife were "breaking up or getting back together, or something."

Trooper Robert Faul of the Maryland State Police received information in July 1977 from an unidentified individual about a larceny from a liquor store. Subsequent investigation led the trooper to believe that the informant was actually speaking of the theft from West's truck. Following up on the information he had, Faul spoke to Cooper who told the trooper that he, Cooper, had seen the "property which matched the description of the stolen property." Faul had spoken to Cooper "on numerous occasions" between September 1977

---

6. Duncan's appeal, if there be one, is not presently before us.

and the time Cooper was arrested in January 1978. "The topic of conversation," Faul said, "could very well have been points that I was investigating. I was charged with the investigation of the crime. He [Cooper] was a suspect at that time and was not charged with it."

The investigation obviously led Faul to conclude that Cooper was involved in the theft because he arrested Cooper on January 23, 1978, and charged him.

As we have already observed, the trier of fact, the jury, apparently did not share Faul's belief as it convicted Cooper only of aiding and abetting after the fact.

## I.

## THE CRIMINAL INFORMATION

Cooper asserts that although his trial counsel did not raise the specter of the second count of the Criminal Information's not charging an offense cognizable under Maryland law, nevertheless, the issue can be raised at any time. Md. Rule 736 a 2.

That rule provides:

> "a. *Mandatory Motions.*
>
> A motion asserting one of the following matters shall be filed in conformity with this Rule. Any such matter not raised in accordance with this Rule is waived, unless the court, for good cause shown, orders otherwise:
>
> . . . .
>
> 2. A defect in the charging document, other than its failure to show jurisdiction in the court *or to charge an offense which defenses can be noticed by the court at any time.*" (Emphasis supplied.)

As used in Rule 736 a 2, the noun " 'Court' means the Circuit Court for any county . . . ," but it does not mean this Court. Md. Rule 5 i. Notwithstanding the rule, the question of jurisdiction, it has been repeatedly held, may be raised at any time. *Tate v. State,* 236 Md. 312, 203 A.2d 882 (1968);

*Bowen v. State,* 206 Md. 368, 111 A.2d 844 (1955); *Berlinsky v. Eisenberg,* 190 Md. 636, 59 A.2d 327 (1948); *Carroll v. State,* 19 Md. App. 179, 310 A.2d 161 (1973); *Waldrop v. State,* 12 Md. App. 371, 278 A.2d 619, *cert. denied,* 263 Md. 722 (1971). *Ergo,* if the "failure . . . to charge an offense" is jurisdictional, then it too may be raised at any time, including on appeal, even though it was not raised and decided in the trial court. *Carroll v. State, supra,* 19 Md. App. at 181, 310 A.2d at 162.

We are required to focus our attention upon the charging instrument, the Criminal Information, in order to determine whether that writing charges an offense under the law of Maryland, and if the answer to that query is in the negative, we must then address ourselves to whether the defect is jurisdictional.

We begin our discussion by analyzing the second count of the Criminal Information, the count upon which the appellant was convicted. The essence of the offense charged in that count is that Cooper "willfully, unlawfully and knowingly did aid, harbor and assist . . . Duncan after the commission of two felonies, (1) Grand Larceny, and (2) Receiving Stolen Goods over $100.00, and did so with full knowledge of said crimes. . . ."

Appellant's assault on the phraseology of the charge is bimanous. On the one hand he asserts that the language of the count does not state an offense because it fails to allege the elements necessary to constitute the common law offense of accessory after the fact.

Sir William Blackstone, in IV *Commentaries of the Law of England* * 37 states:

> "An accessory *after* the fact may be, where a person, knowing a felony to have been committed, receives, relieves, comforts, or assists the felon. Therefore to make an accessory *ex post facto,* it is in the first place requisite that he knows of the felony committed. In the next place, he must receive, relieve, comfort, or assist him. And, generally, any assistance whatever given to a felon, to hinder his being apprehended, tried, or suffering punishment,

makes the assistor an accessory." (Footnotes omitted.)

The more modern writers are in agreement that there are four necessary ingredients to constitute the crime of accessory after the fact:

1) A completed felony must have been committed by another prior to the accessoryship;

2) The accessory must not be a principal in the commission of the felony;

3) The accessory must have knowledge of the felony; and

4) The accessory must act personally to aid or assist the felon to avoid detection or apprehension for the crime or crimes.

R. M. Perkins, *Criminal Law* 667 (2d ed. 1969); *accord,* Clark & Marshall, *A Treatise on the Law of Crimes* § 8.06 (M. F. Wingersky, 6th ed. 1958); 22 C.J.S., *Criminal Law* §§ 95-99 (1961); H. Ginsberg & I. Ginsberg, *Criminal Law and Procedure in Maryland* 13-14 (1940); 1 Hale, *Historia Placitorum Coronae,* (The History of the Pleas of the Crown) 618-622 (1st Am. ed. 1847); 1 Wharton's *Criminal Law* § 33 (C.E. Torcia, 14th ed. 1978).

A reading of the Criminal Information will disclose that the first three elements of the crime of accessory after the fact are unmistakably present. It is the fourth ingredient that Cooper perceives as missing from the charge. The State, however, reads the count as alleging all four of the requisites. It reasons that "[t]he information states in part that Appellant 'did aid, *harbor,* and assist . . . Duncan. . . .' The term 'harbor' includes the concept of acting with the intent to shield the one assisted from the law." (Emphasis supplied.) The verb *harbor* is defined to mean: "To receive clandestinely and without lawful authority a person for the purpose of so concealing him that another having a right to the lawful custody of such person will be deprived of the same. *Jones v. Van Zandt,* 5 How. 215, 227, 12 L.Ed. 122." *Black's Law Dictionary* 876 (3rd ed. 1933). *See also Watson v. State,* 208

Md. 210, 218, 117 A.2d 549, 552 (1955); *Baumgartner v. Eigenbrot,* 100 Md. 508, 513, 60 A. 601, 603 (1905); *McClain v. State,* 10 Md. App. 106, 114-15, 268 A.2d 572, 576-77, *cert. denied,* 259 Md. 733 (1970); *Robinson v. State,* 5 Md. App. 723, 728, 249 A.2d 504, 507, *cert. denied,* 254 Md. 719 (1969); *Agresti v. State,* 2 Md. App. 278, 280, 234 A.2d 284, 285-86 (1967); *Regina v. Butterfield,* 1 Cox, C.C. 39 (Yorkshire Winter Assizes, 1843); Archbold, *Criminal Practice and Pleading* *18; 1 Hale, *supra,* 618; L. Hochheimer, *Laws of Crimes and Criminal Procedure* § 36 (1897).

Inasmuch as *harbor* means to receive the person with intent to conceal that person so as to avoid his arrest, the element Cooper perceives as missing from the Criminal Information is not in fact missing at all. We think the Information properly charged the offense of accessory after the fact.

On the other hand, Cooper avers that inasmuch as the Information asseverated that Duncan had committed "two felonies (1) Grand Larceny *and* (2) Receiving Stolen Goods over $100.00" it failed to charge an offense cognizable under the laws of this State. Appellant contends that one may not be both the thief and a receiver of the goods,[7] then, "it is axiomatic that there is no crime for aiding a thief-receiver." Recognizing that the issue was not raised in the trial court, and if short of being jurisdictional, is not properly before us, Md. Rule 1085; *Phenious v. State,* 11 Md. App. 385, 274 A.2d 658, *cert. denied,* 262 Md. 748 (1971), Cooper points to Md. Rule 736 a 2 as permitting the matter to be raised "at any time," including before this Court. *Phenious* makes clear that "[i]f the indictment [or information fails] to charge an offense ... there is a matter of jurisdiction and we are permitted to review the question whether or not it was tried and decided below, *Baker v. State,* 6 Md. App. 148, 151, 250 A.2d 677 [(1969)]." 11 Md. App. at 390-91, 274 A.2d at 661.

7. A host of Maryland cases so hold, including: Hardesty v. State, 223 Md. 559, 165 A.2d 761 (1960); Bell v. State, 220 Md. 75, 150 A.2d 908 (1959); Heinze v. State, 184 Md. 613, 42 A.2d 128 (1945); Beard v. State, 42 Md. App. 276, 399 A.2d 1383 (1979); Hinton v. State, 36 Md. App. 52, 373 A.2d 39 (1977); Wilson v. State, 6 Md. App. 397, 251 A.2d 379 (1969); Jefferies v. State, 5 Md. App. 630, 248 A.2d 807 (1969); Grimes v. State, 4 Md. App. 607, 244 A.2d 456 (1963), *cert. denied,* 252 Md. 731 (1969); Osborne v. State, 4 Md. App. 57, 241 A.2d 171 (1968).

We do not view the charging of two felonies in one count as jurisdictional, but rather as a question of duplicity which must be raised in the trial court. Whenever a count in an indictment or Criminal Information charges more than one criminal offense, it is duplicitous and, therefore, defective. *Kirsner v. State,* 183 Md. 1, 36 A.2d 538 (1944); *Jackson v. State,* 176 Md. 399, 5 A.2d 282 (1939); *Ayre v. State,* 21 Md. App. 61, 318 A.2d 828 (1974); L. Hochheimer, *supra* at 144.

We observed in *Ayre* that:

"When a statute creates an offense and specifies several different acts, transactions, or means by which it may be committed, an indictment for violation thereof may properly allege the offense in one count by charging the accused in conjunctive terms with doing any or all of the acts, transactions, or means specified in the statute. This is the rule of *Leon v. State,* 180 Md. 279, 286 [, 23 A.2d 706, 710 (1942)] as construed in *Morrissey v. State,* 9 Md. App. 470, 475-476 [, 265 A.2d 585, 587-88 (1970)]. *See Bonneville v. State,* 206 Md. 302 [, 111 A.2d 669 (1955)]; *Sturgill v. State,* 191 Md. 75 [, 59 A.2d 763 (1948)]; *Thomas v. State,* 173 Md. 676 [, 197 A. 296 (1938)]; *Reynolds v. State,* 141 Md. 637 [, 119 A. 457 (1922)]; *Pritchett v. State,* 140 Md. 310 [, 117 A. 763 (1922)]; *Stearns v. State,* 81 Md. 341 [, 32 A. 282 (1895)]. See also 41 Am. Jur. 2d, *Indictments and Informations,* § 213. We said in *Morrissey,* at 476 [, 265 A.2d at 588]:

'While the rule is that an indictment or information should not charge the commission of two or more substantive offenses in the same count, it is not objectionable to charge in one count [in conjunctive terms] several related acts which enter into and constitute one offense, although when separately considered they may be distinct offenses. *** Thus, if the acts alleged are of the same nature and so connected that they can be construed as stages in one criminal transaction, they may be joined in one count,

> although separately considered they are separate offenses.' "

21 Md. App. at 65-66, 318 A.2d at 831. (Footnote omitted.)

In our view the two statutory crimes of larceny of more than $100 and receiving of stolen goods are two separate and distinct crimes and do not permit of joinder in one count. *Pritchett v. State, supra.* We agree with appellant that the second count of the information was duplicitous. Notwithstanding its duplicity, it does state an offense. In fact, it improperly states two offenses; either of them, however, are within the jurisdiction of the circuit court. We conclude that the information, while hardly a model to be emulated, does set out an offense over which the Circuit Court for Cecil County had jurisdiction. The duplicity issue, were it properly before this Court, would have merit, but it is a matter that should have been raised and decided in the trial court. It may not be raised for the first time here. Md. Rule 1085.

## THE SUFFICIENCY OF THE EVIDENCE

The State notes, and we agree that the question of the sufficiency of the evidence is not before this Court inasmuch as the appellant made no motion for judgment of acquittal at the close of all the evidence. Md. Rule 756 a. *See Williams v. State,* 19 Md. App. 204, 310 A.2d 593 (1973); *Martin v. State,* 10 Md. App. 274, 269 A.2d 182 (1970).

## THE CIRCUIT COURT ESTABLISHED AND APPLIED A REBUTTABLE PRESUMPTION IN FAVOR OF THE POLICE

It is apparent that what appellant argues is that the hearing judge believed the statement of the accused was voluntary *vis à vis* involuntary as the appellant claimed. The appellant directs our attention to the remarks of the trial judge when he denied a motion to suppress the statement made to the troopers by the appellant. The judge said:

> "I have to be more convinced than I am with this evidence that any such thing occurred. I just don't

think that the Troopers, having this drilled into them day after day and knowing what happens to cases when they come to court if they don't give the Miranda Rights, I can't imagine them failing to give them. And I can't imagine them compromising themselves as they give them. In the absence of stronger evidence here, I am not going to believe it."

If that were all the judge said, the appellant might have a strong point, but that is not all that was said. Before the above-quoted words were stated, the judge opined:

"Weighing the credibility of all witnesses in this matter, the Court is satisfied by a preponderance of the evidence that the statement, whatever it may have been, was made voluntarily, that anything that happened prior to January 23, 1978, did not fall within the Miranda Ambit Nor the traditional voluntariness ambit, because there was no — the Defendant was not in custodial care, and therefore, the rules of Miranda would not apply. Moreover, it is abundantly clear that whatever may have happened prior to January 23, 1978, that the rights were explained to him, and the Court adopts the version of the Trooper that the rights were explained to him before he signed the statement, as he indeed practically admitted. Because he said he read the preamble before he signed the statement, and also the explanation of rights were made to him before he signed the statement. I would reject the Defendant's testimony and adopt the Trooper's testimony about the question of bond and being furnished or not and things might go well, that sort of thing."

When the judge's remarks are read as a whole it is clear that he placed the burden of showing voluntariness, by a preponderance of the evidence, *Mulligan v. State,* 18 Md. App. 588, 308 A.2d 418 (1973), squarely upon the State and not on the appellant.

## *THE JOINDER FOR TRIAL OF THE INDICTMENT AND THE INFORMATION*

Appellant next complains that the trial judge improperly permitted the joinder of the indictment and the Criminal Information. The issue was not raised and decided in the trial court, and it is, therefore, improperly before us. Md. Rule 1085. We decline to consider it.

## *THE TRIAL JUDGE'S JURY INSTRUCTIONS WERE ERRONEOUS.*

Appellant next says that the trial judge improperly instructed the jury on the law of accessory after the fact. Recognizing that no exception was taken to the judge's instructions, and that ordinarily the matter would not be preserved for appellate review, Md. Rule 757 f, h, appellant invites us to "take cognizance of and correct any plain error in the instructions material to the rights of the [appellant] even though the error was not objected to" as provided in Md. Rule 757 h. *Brown v. State,* 14 Md. App. 415, 422, 287 A.2d 62, 65 (1972).

Assuming *arguendo* that the instruction left something to be desired, the appellant did not comply with Md. Rule 757 f. To hold that the issue is now properly before us, we must determine that it is plain error within the meaning of *Brown.* Md. Rule 757 h. We decline to accept appellant's invitation for the reason that we view the error as one of omission which could have been readily cured by the judge had the appellant requested a supplementary instruction. That appellant now chooses to characterize the omission as a commission in order to bring it within *Brown's* sphere is unavailing. We perceive no merit in appellant's contention.

One final word is in order. Appellant enumerates six reasons why he believes his trial counsel was so ineffective as to deny appellant his constitutional right to "genuine and effective representation." *State v. Merchant,* 10 Md. App. 545, 550-51, 271 A.2d 752, 755-56 (1970). The issue, as with many others in this appeal, was not raised and decided in the trial

court and may not be raised for the first time on appeal. Md. Rule 1085. Appellant, however, is not left without a forum to air his grievance. He has available to him the Maryland Post Conviction Act, Md. Ann. Code art. 27, § 645A. If and when appellant proceeds under that act, a court will then decide the matter of the effectiveness *vel non* of counsel.

*Judgment affirmed.*
*Costs to be paid by appellant.*