**330**

583 A.2d 1114

**Wilbert POWELL, Jr.**

**v.**

**STATE of Maryland.**

**No. 173, Sept. Term, 1990.**

Court of Special Appeals of Maryland.

Jan. 14, 1991.

James C. Savage, Assigned Public Defender, Rockville (Leslie S. Heimov and James J. Seirmarco, Third Year Law Students, on brief), Washington, D.C., for appellant.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Frank R. Weathersbee, State's Atty. for Anne Arundel County, Annapolis, on brief), for appellee.

Argued before BLOOM, WENNER and FISCHER, JJ.

BLOOM, Judge.

A jury in the Circuit Court for Anne Arundel County (Lerner, J.) acquitted appellant, Wilbert Powell, of first degree murder but convicted him of armed robbery (technically, robbery with a deadly or dangerous weapon, Md.Code Ann., art. 27, § 488), attempted armed robbery, robbery, attempted robbery, assault with intent to rob, theft, attempted theft, assault and battery, and assault. After merging the seven related charges into the armed robbery conviction, the trial court sentenced Powell to 15 years.

The first charge lodged against appellant, on 16 February 1989, was first degree murder. During his initial appearance in District Court on 17 February 1989, he was advised of his right to a preliminary hearing with respect to that charge. Appellant requested a hearing which was held on 8 March 1989. The District Court found probable cause to believe that appellant committed the offense.

On 23 February 1989 the State filed in the circuit court a criminal information charging appellant with murder, armed robbery, attempted armed robbery, robbery, attempted robbery, assault with intent to rob, theft, attempted theft, assault and battery, and assault. Appellant first appeared before the circuit court on 10 April 1989. Because he appeared without counsel, the hearing was reset for 24 April 1989. There is nothing in the record to indicate what transpired at the hearing on 24 April 1989.

The trial took place on November 7, 1989. At the close of all the evidence, appellant moved for an acquittal on all charges. Appellant also moved to dismiss the second, fourth, and fifth counts of the information on the ground that he had not been advised that he was entitled to a preliminary hearing with respect to charges of armed robbery, attempted armed robbery, and assault with intent to rob. Both motions were denied, appellant was convicted and sentenced, and this appeal followed.

Appellant contends:

1. The circuit court lacked jurisdiction on counts two, four, and five because the State charged by information, not indictment, and the defendant was never apprised of his absolute right to a preliminary hearing to determine probable cause.

2. The trial court erred when it denied appellant's motion for judgment of acquittal on counts two, three, four, five, six, and seven because the evidence was insufficient.

3. The trial court erred by refusing to admit testimony of defense witness Jerome Thomas regarding a third party's knowledge of the crime charged.

Finding no merit in any of these contentions, we shall affirm.

## *Facts*

On 13 February 1989 the body of Donald Jackson was found in his dormitory room at the Laurel Racetrack. He had been the victim of a stabbing and strangulation. According to the testimony, beginning at 7:30 p.m. on 10 February 1989 appellant joined three other men, James Stokes, Danny Patterson, and the decedent, Donald Jackson, in Stokes's room for an evening of drinking. Stokes testified that the last time he saw appellant was after 10 p.m. that evening, when appellant departed. Thereafter, the three men who remained continued to drink until Stokes and the decedent went to the decedent's room to drink for about another fifteen minutes. Stokes testified that it was about midnight when he left the victim's room.

Bruce Turk, an inmate who shared a multiple-person cell with appellant, testified that appellant had admitted to him that he murdered the decedent. At the close of the State's case the defense moved for a judgment of acquittal which was denied.

Appellant testified that during the course of the evening he argued with the decedent over a cigarette and that he asked the decedent for some money. Appellant further testified that sometime after leaving Stokes's room he returned to the victim's room in order to apologize to him for their earlier argument. Appellant's version of what then transpired was that the victim came at him with a knife, they tussled briefly, the victim cut his lip during the struggle, and then appellant left to go to the home of his friend, Edward Harding.

Edward Harding testified that shortly after midnight appellant entered his home and both men slept until approx-

imately 7:00 a.m. the next morning. According to Harding, appellant did not have any blood on his clothes.

Appellant then sought to introduce the testimony of Jerome Thomas, proffering that, while appellant was in jail awaiting trial, an individual named Uggy Wright told Thomas that he, Uggy, had killed Donald Jackson and that he was glad to see Nick Powell taking the blame for it. The court refused to allow the testimony, ruling that it was nothing more than a general statement that could not be considered trustworthy.

## Discussion

### I

Appellant contends that the circuit court acted in excess of its jurisdiction when it entertained counts two, four, and five because he had never been advised of and therefore did not waive his right to a preliminary hearing to determine probable cause. Citing Md.Ann.Code art. 27, § 592 (amended 1983),[1] appellant argues that "the State's use of a

---

1. § 592 reads as follows:
   (a) In all cases involving a felony, other than a felony within the jurisdiction of the District Court, in which the accused has not requested a preliminary hearing within ten days after being informed by the court or court commissioner of the availability of such a hearing, or in all cases in which a preliminary hearing has been held and probable cause to hold the accused has been found, the State's Attorney may charge by information.
   (b)(1) In any case where the defendant has been charged with a felony, other than a felony within the jurisdiction of the District Court, the defendant shall be advised by the court or court commissioner, at the time of the initial appearance required by the Maryland District Rules, of his right to request a preliminary hearing. The defendant may make that request at the time of the initial appearance or at any time within ten days thereafter. If the defendant fails to request a preliminary hearing within the ten-day period, it is waived.
   (2) If the State's Attorney elects to charge the accused by criminal information, the right of the defendant to the preliminary hearing is absolute, if he has requested such a hearing as set out above.
   (3) If the State's Attorney elects to charge the accused by grand jury indictment, the preliminary hearing is not a matter of right to the defendant but may be afforded in the court's discretion. A prelimi-

criminal information, absent a knowing waiver by the Defendant of his absolute right to a preliminary hearing, rendered the Court below without jurisdiction to hear felony counts two, three [four], and five."

Appellant relies on *Walters v. State,* 242 Md. 235, 240, 218 A.2d 678 (1965), wherein the Court stated that "an accused may not be prosecuted for a felony upon a criminal information unless he has first waived his right to action by the grand jury." In *Walters,* the State did not obtain a waiver, but Walters was found not guilty of the felony. Since the only crime for which Walters was convicted was a misdemeanor, the Court held that the procedure was proper under Maryland Rule 708.[2]

Likewise, in *Landaker v. State,* 234 Md. 489, 200 A.2d 44 (1964), the defendant argued that he was improperly tried on information. According to the Court

Maryland Rule 708 which was in effect when the appellant was first charged in May 1962, provides explicitly that a person charged with the commission of a misdemeanor, who has not been indicted by the grand jury, may be prosecuted upon an information filed by the State's Attorney (the rule goes on to provide that one charged with commission of a felony may not be so

---

nary hearing is not a matter of right in any other case, but may be afforded in any case in the court's discretion, upon motion of the State's Attorney or the defendant.

**2.** Rule 708 reads as follows:

Information—A person charged with the commission of a misdemeanor, before indictment by the grand jury, may be prosecuted upon an information filed by the State's attorney. A person charged with the commission of a felony may not be prosecuted upon an information except pursuant to Rule 709 (Immediate Trial)

The pertinent section of Rule 709 reads as follows:

b. Information by State's Attorney—Upon the filing of a petition pursuant to this Rule, the State's attorney shall immediately file an information against the accused except in a case originating before a trial magistrate which is to be tried upon warrant (Cf. Art. 27, § 592.)

c. Time of Trial—An accused who has filed a petition under this Rule shall be tried, without regard to term of court, within such reasonable time as to accord him a speedy trial (Art. 27, § 592.)

prosecuted unless, pursuant to Rule 709, he waives action by the grand jury and asks an immediate trial). In the cases before us appellant was prosecuted only for misdemeanors and Rule 708 controlled.

*Id.* at 491–492, 200 A.2d 44.

The State counters that "no motion under Maryland Rule 4–252 was ever raised concerning the absence of a preliminary hearing, or a defect in the waiver of such a hearing."

According to the record, appellant filed an omnibus motion which included a request that "all charges against this Defendant be dismissed for that there are defects in the institution of the prosecution and in the charging documents." There is, however, no indication in the record that appellant ever attempted to obtain a ruling on this motion. The issue concerning the failure of the District Court or its Commissioner to advise appellant of his right to a preliminary hearing was first raised at the close of the State's case-in-chief on a motion for judgment of acquittal.

In a dialogue with the trial court, appellant's counsel argued that this was a jurisdictional question, which may be raised at any time, rather than a mere defect in the institution of the prosecution, which must be raised by pre-trial motion. The trial judge disagreed and denied the motion, holding that the issue was waived because it should have been raised prior to trial.

Appellant asserts that because "[a] motion asserting failure of the charging document to show jurisdiction in the court or to charge an offense may be raised at any time," pursuant to Maryland Rule 4–252(c),[3] "it was proper for Defendant's trial counsel to raise this issue prior to present-

---

**3.** Rule 4–252(c) reads as follows:

  (c) Other Motions—A motion asserting failure of the charging document to show jurisdiction in the court or to charge an offense may be raised and determined at any time. Any other defense, objection, or request capable of determination before trial without trial of the general issue, shall be raised by motion filed at any time before trial.

ing Defendant's case and it is properly heard now on appeal."

We find *Smith v. State*, 73 Md.App. 156, 533 A.2d 320 (1987), helpful to our analysis of this issue. In *Smith* the defendant claimed that the District Court was without jurisdiction to prosecute him for driving under the influence of alcohol because he had not been advised of his right to a jury trial and therefore had never waived that right. The defendant contended that therefore the court's jurisdiction had never been established and "any proceedings which it conducted with regard to any of the charges pending against him were a nullity." *Id.* at 159, 533 A.2d 320.

We rejected that argument, stating:

Such error if in fact it did occur, was one of procedure in the court's exercise of its jurisdiction which could have been corrected on direct appeal by the appellant from his conviction and sentence on May 3, 1982. It was not a proper subject for review by writ of certiorari, which is a writ issued by a circuit court for the limited purpose of determining whether an inferior tribunal has acted without fundamental jurisdiction.

*Id.* at 161, 533 A.2d 320 [citations omitted]. Whether the procedural error was properly preserved for appeal was not before us in *Smith*.

Appellant also cites *Cooper v. State*, 44 Md.App. 59, 407 A.2d 756 (1979), for the correct proposition that a jurisdictional question may be raised at any time, including on appeal. Unlike the case at bar, *Cooper* involved a defect in the charging document wherein it was alleged that the criminal information failed to charge an offense cognizable under Maryland law. Cooper's trial counsel neglected to raise the issue. On appeal, Cooper argued that the defect was of a jurisdictional nature which may be raised at any time. We ruled that, although the second count of the information was duplicitous, "it does state an offense." *Id.* at 68, 407 A.2d 756.

In fact, it improperly states two offenses; either of which the Circuit Court for Cecil County had jurisdiction. The duplicity issue, were it properly before this Court, would have merit, but it is a matter that should have been raised and decided in the trial court. It may not be raised for the first time here.

*Id.*

■ A court that lacks fundamental subject matter jurisdiction is powerless to inquire into the facts, to apply the law, and to declare the punishment for an offense. *Williams v. State,* 302 Md. 787, 792, 490 A.2d 1277 (1985). According to the Court in *Williams, supra,* "It is fundamental that a court is without power to render a verdict or impose a sentence under a charging document which does not charge an offense within its jurisdiction prescribed by common law or by statute." *Id.* at 791, 490 A.2d 1277 [citations omitted]. In *Williams,* the defendant was convicted of robbery with a deadly weapon. He appealed, contending that the charging document failed to state an offense and was therefore fatally defective for lack of jurisdiction in the circuit court. Appellant made no objection during the trial to the sufficiency or form of the charge contained in the criminal information. *Id.*

The Court of Appeals, despite the requirement that every element of the charged crime must be set forth in the indictment, held that the information met the requirements of art. 21 of the Maryland Declaration of Rights, which requires that persons charged with crimes be informed of the accusations against them. *Id.* at 791 n. 1, 490 A.2d 1277. Therefore, the circuit court was fully vested with jurisdiction. *Id.* at 793, 490 A.2d 1277.

In a companion case, the Court held that the challenged indictment "sufficiently characterized the statutory crime charged so that the ... offense [was] within the jurisdiction of the circuit court." *Hall v. State,* 302 Md. 806, 809, 490 A.2d 1287 (1985).

Although both cases dealt with the charging documents, the Court rejected the argument that the trial court's jurisdiction should be subject to rigid and technical rules. *Williams, supra,* 302 Md. at 793, 490 A.2d 1277; *Hall, supra,* 302 Md. at 809, 490 A.2d 1287.

■ In the case *sub judice,* the failure to advise appellant of his right to a preliminary hearing did not deprive the court of its fundamental jurisdiction. The information was not defective in charging the commission of crimes that came under the jurisdiction of the circuit court. What appellant complains of would constitute a procedural error in the invocation of the court's jurisdiction, but such errors are waived unless properly and timely raised. "Where the claimed defect is not jurisdictional, it must be seasonably raised before the trial court or it is waived." *Williams v. State,* 302 Md. 787, 792, 490 A.2d 1277 (1985).

■ In agreement with the trial court, we hold that, pursuant to Md. Rule 4–252(c), any right to assert a claim that might have theretofore existed was waived when appellant failed to raise this issue prior to the commencement of the trial. Appellant's motion to dismiss counts two, four, and five for failure to advise appellant of his right to a preliminary hearing was properly denied.

## II

■ Appellant next argues that the trial court erred when it denied his motion for judgment of acquittal on counts two, three, four, five, six, and seven because the evidence was insufficient. He specifically contends that there was insufficient evidence of force, insufficient evidence of any taking, and insufficient evidence of an intent to rob.

In *Bloodsworth v. State,* 307 Md. 164, 512 A.2d 1056 (1986), the Court defined the standard by which we must review a challenge to the sufficiency of the evidence to convict. "The applicable standard is whether after viewing the evidence in the light most favorable to the prosecution

*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. The standard is derived from *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)." *Id.* 307 Md. at 167, 512 A.2d 1056 [citations omitted].

Appellant contends that the only evidence which supports appellant's guilt was the testimony of Bruce Turk, a fellow inmate. Turk testified that, while he and appellant were housed in the same dormitory at the Anne Arundel County Detention Center, appellant told him that after he left Stokes's room that evening he returned sometime later to Jackson's room in order to rob him. According to Turk, appellant said that he kicked the door down, entered the room, and began going through the victim's pockets. Turk then testified that according to appellant when Jackson regained consciousness he began swinging a knife, where-upon appellant took the knife from Jackson and began stabbing him in the upper body. Turk testified that appellant told him that he took all Jackson's money except for $5.00 in order to make it seem as though he hadn't been robbed.

Appellant himself testified that he returned to Jackson's room later that night. According to appellant, he knocked on the door and identified himself, and when Jackson answered his door he was wielding a knife. At that point Jackson tried to close the door and appellant kicked it in in order to dislodge the knife. According to appellant there was a brief struggle during which Jackson may have cut his lip. Appellant also testified that there was an altercation between himself and the victim during the course of the evening over some cigarettes and that appellant asked Jackson for some money.

In *Bloodsworth v. State,* 76 Md.App. 23, 543 A.2d 382 (1988), we held that "it is the province of the jury as fact finder, not the trial judge or an appellate court, to weigh the credibility of testimony and determine the issue of guilt or innocence." 76 Md.App. at 33, 543 A.2d 382 (quoting

*Barnes v. State,* 57 Md.App. 50, 56, 468 A.2d 1040, *cert. denied,* 299 Md. 655, 474 A.2d 1344 (1984)).

The jury had an opportunity to weigh Turk's credibility. On cross-examination appellant elicited testimony from Turk concerning his prior criminal convictions. In addition, appellant examined Gregory Savage, another inmate housed in the same dorm as Turk and appellant, who testified that he thought Turk was lying in order to further his own cause.

The evidence was clearly sufficient to enable a rational fact-finder to find Powell guilty beyond a reasonable doubt of the crimes for which he was convicted.

### III

Lastly, appellant asserts that the extrajudicial statements of a third party should have been admitted because they tended to show that another person had killed the decedent. According to appellant, defense witness Jerome Thomas was prepared to testify that Uggy Wright told him that he, Uggy, had killed Donald Jackson.[4] Appellant contends in the first place that this is not hearsay since it was not being introduced to "show the statements made by Uggy Wright were truthful or that in fact they were true, but that he had knowledge of the crime." We can reject that contention out of hand. Unless true, the statement would have absolutely no relevance. Appellant, by way of an alternate argument, states that even if the testimony is hearsay, to exclude it would be a denial of appellant's right to a fair trial. He relies upon *Foster v. State,* 297 Md. 191, 464 A.2d 986 (1983).

■■ Appellant's reliance on *Foster* is misapplied. In *Foster,* the defendant was convicted of felony murder. Her

---

**4.** The record discloses that defense counsel stated to the trial court that Jerome Thomas would not testify that Wright had committed the crime, but merely that Wright told him that since they had Powell he (Wright) didn't have to worry anymore and that Wright asked whether any police had been looking for him.

defense was that her husband had committed the crime. There, the Court was concerned with the admissibility of testimony by a friend of the victim to the effect that the victim had told her that the husband of the accused had threatened to kill the victim. A plurality of the Court (Cole, Davidson, Couch, JJ.) concluded that exclusion of the bi-level hearsay deprived the accused of a fair trial in violation of the Due Process Clause of the Fourteenth Amendment. 297 Md. at 210, 464 A.2d 986. They stated:

> Here, the crux of the accused's defense was that she had not committed the murder, but rather that her husband and her daughter had committed that crime. Thus, the central issue in the case related to the credibility of the accused, her daughter, and her husband. There was much evidence to cast doubt upon the credibility of each of the three primary witnesses. In essence, the jury was required to determine whether to believe the husband's and daughter's version of the facts that the accused had committed the murder, the accused's version of the facts that her husband and daughter had committed the murder, or neither version of the facts.... In view of the fact that the accused bears no burden of proof, but needs only to raise a reasonable doubt in the minds of the jury [citations omitted] the proffered testimony that the accused's husband had threatened to kill the victim was a critical additional piece of evidence tending to show that the husband had killed the victim.

*Id.* at 210–11, 464 A.2d 986.

The plurality opinion also stated that an extrajudicial confession by a person other than the accused is admissible, citing *Brady v. State,* 226 Md. 422, 428–29, 174 A.2d 167 (1963), and *Thomas v. State,* 186 Md. 446, 452, 47 A.2d 43 (1946). 297 Md. at 210, 464 A.2d 986. In *Brady,* the Court dealt with the admissibility of a written confession by a person other than the accused. The *Brady* Court recognized that "as a general rule an extrajudicial confession or admission by a third party that he committed the offense for which the defendant is on trial is not admissible." 226

Md. at 427, 174 A.2d 167 (citations omitted). It went on to hold, however, that the rule is not without exception and that its operation has been limited. Out of concern for the trustworthiness of the declaration against interest proposed to be offered, the Court stated, "To what extent a confession or admission of a third party is free of collusion and bears the indicia of trustworthiness is a question which we think should be entrusted in the first instance to the sound discretion of the trial judge." *Brady*, at 429, 174 A.2d 167.

*Thomas* also involved the introduction of a written confession made by someone other than the defendant. There the Court declined to base its decision on cases cited by the State because "[i]n those cases the challenged declaration was treated as hearsay because it did not derive its value solely from the credits to be given to the witness himself, but rested in part on the competency and veracity of some other person. In the court below, on the contrary, the declarants themselves came to the witness stand." 186 Md. at 451, 47 A.2d 43.

A fourth member of the Court in *Foster* concurred with the plurality to reverse Mrs. Foster's conviction because of the exclusion of the evidence, but did so on a basis other than denial of due process. Judge Eldridge was of the opinion that the evidence, although hearsay, was admissible because it was trustworthy. Judges Murphy, Smith, and Rodowsky were of the opinion that the trial judge was right to exclude the evidence because it was inadmissible hearsay. Since there was no majority opinion, *Foster* is not authority for the proposition advanced by appellant. A majority of the Court of Appeals did not hold either that exclusion of "critical" hearsay evidence helpful to the accused constituted a denial of due process or that hearsay favorable to the accused must be admitted even if it did not come within any recognized exception to the rule against hearsay if it is "reliable." In any event, the hearsay testimony proffered in this case was neither "critical" nor particularly "reliable." Unlike the situations in *Brady v. State, supra,* or *Thomas v. State, supra,* cited in *Foster,*

the proffered declaration of Uggy Wright was not a confession or an admission of guilt (*see* n. 4) that could be classified as a "reliable" declaration against the penal interest of the declarant. And unlike the proffered hearsay in *Foster*, the accused in this case did not even suggest that Uggy Wright's alleged extrajudicial declaration to Jerome Thomas tended to show that someone other than the accused committed the crime. In fact, his trial counsel specifically stated to the court that the proffered testimony of Jerome Thomas as to what Uggy Wright said was being offered "only to show that some person had knowledge of the crime...," which he could only have "if he were there or saw it."

We hold that the court did not err in excluding the proffered testimony of Jerome Thomas.

JUDGMENT AFFIRMED.

COSTS TO BE PAID BY APPELLANT.