## McGRAW *v.* STATE

[No. 266, September Term, 1963.]

274

*Decided April 3, 1964.*

The cause was argued before HENDERSON, HAMMOND, HOR-
NEY, MARBURY and SYBERT, JJ.

*Charles C. Futterer* for the appellant.

*Robert L. Karwacki, Assistant Attorney General,* with whom
were *Thomas B. Finan, Attorney General, Leonard T. Kardy,
State's Attorney for Montgomery County,* and *James J. Crom-
well, Assistant State's Attorney,* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

The appellant was convicted on the first count of an indict-
ment charging him with feloniously committing "burglary of
the dwelling house, to wit, Christ Congregational Church, owned
and occupied by Christ Congregational Church, Incorporated,
a corporation * * *." The proof showed that the appellant
had broken and entered the church in the night time and at-
tempted to remove therefrom a safe in the pastor's office con-
taining a considerable sum of money. The church was not lived
in or connected to any dwelling house. Entrance had been gained
by breaking a window. The appellant, when arrested, readily
admitted his entry and attempt to remove the safe.

The appellant contends that there is no crime of common law
burglary of a church, and that since proof of breaking and en-
tering a church in the night time does not establish the offense
of common law burglary, there is a fatal variance. Code (1957),
Art. 27, sec. 29, does not attempt to define the term "burglary"
but merely fixes the penalty. *Bowser v. State,* 136 Md. 342,
346. Nor is there anything in the statutes dealing with break-
ing and entering in the daytime, or into enumerated structures,
at variance with the common law crime. Thus, the question be-
fore us concerns the common law. Since we have no prior de-
cision on the point, we must look to the common law of Eng-
land. In *State v. Buchanan,* 5 H. & J. 317, 358 (1821), Judge
Buchanan, for the Court, noted that the statement in our Dec-
laration of Rights (then Article 3, now Article 5) that "the
Inhabitants of Maryland are entitled to the Common Law of

England * * *" had reference to the "common law in mass, as it existed here, either potentially, or practically, and as it prevailed in England at the time, except such portions of it as are inconsistent with the spirit of that instrument, and the nature of our new political institutions." He went on to say that no part should be excluded "merely because it had not been introduced and used in the courts here," and that decisions in England subsequent to the separation must be "received as expositions of the law as it before existed, and not as creating a new law, or altering the old one, which could only be done by legislative enactment. * * * Precedents therefore do not constitute the common law but serve only to illustrate principles." See also *Knee v. Baltimore Passenger Ry. Co.,* 87 Md. 623, 624 and *Turner v. Wash. San. Com.,* 221 Md. 494, 503.

The oldest case on the subject seems to be *Anon,* 1 Dyer 99a (1553), Easter Term, 1 Queen Mary reported in 73 Eng. Rep., Reprint 216, where the indictment read: "burglariously breaking open a church by night to steal the goods of the parishioners." "And Bromely held clearly that this is burglary; but he said it ought to be *broke* and *entered."* In 79 Eng. Rep. Reprint 1160 and 1169 (Popham, 36 Eliz.) it is reported that on two occasions all the Justices resolved that it was burglary to break and enter a church. Coke was Attorney General at the time. A burglary indictment involving a church was sustained in *Regina v. Nicholas,* 1 Cox C.C. 218 (1845), and in *Regina v. Baker,* 3 Cox C.C. 581 (1849), Alderson B. said: "I take it to be settled law that burglary may be committed in a church at common law." The writers agree.

Lord Coke in his third institute (1817 ed.) p. 64 says: "If a man do break and enter a church in the night, of intent to steal * * * this is burglary, for *ecclesia est domus mansionalis omnipotentis Dei."* Lord Hale in his Pleas of the Crown (1st Am. ed. 1847), 556, remarked that this was "only a quaint turn," and noted that "the breaking of churches, the walls or the gates of a city is also burglary, and the word *mansionalis* is only applicable to one kind of burglary, *viz.,* the breaking of a private-house, in which case it must be a dwelling-house." In 4 Blackstone, *Commentaries* (Christian ed.), 224, the learned author cites Coke, but relies on the statement in 1 Hawkins,

P.C. 133. See particularly Britton (Nichols trans. 1901), 36 (originally published in the early 14th century). See also 2 East, P.C. (1806), 491; 1 Russell, *Crimes and Misdemeanors* (7th Am. ed.), 785; Bishop, *Commentaries* (5th ed.), § 106; Hochheimer, *Criminal Law* (2d ed.), § 276; Clark & Marshall, *Crimes* (5th ed.), § 406; 2 Pollock & Maitland, *History of English Law* (2d ed.), pp. 492-93; 12 C.J.S., *Burglary,* § 25; 9 Am. Jur., *Burglary,* § 20.

American cases seem to be few, but see *People v. Richards,* 15 N. E. 371 (N. Y.), for a clear recognition of the common law rule. See also *Wilson v. State,* 34 Ohio 199, and *Trevino v. State,* 254 S. W. 2d 786 (Tex. Crim. App.). In 2 Wharton, *Criminal Law* (12th ed.), § 996, the author says: "It has been said that a church edifice may be the subject of burglary at common law [citing authorities]; but this has been doubted [citing 1 Hawkins, *supra,* and *People v. Richards, supra*]." We venture to comment that the only doubt expressed has been as to the reason for the rule. We have found no authority denying that the rule existed at common law.

On the point of variance we think the allegation regarding the church was sufficiently definite to apprise the accused of the offense with which he was charged, and prevent another prosecution for the same offense. Cf. *Hutson v. State,* 202 Md. 333, 338, and *Leet v. State,* 203 Md. 285, 289. The reference to "dwelling house" may be regarded as surplusage. It is not incumbent upon the State to prove averments not necessary to a statement of the crime charged. In any event, the ambiguity, if any, should have been resolved through pretrial procedure under Rule 725 (b).

Finally, the appellant contends that he was prejudiced by a reference in the charge to the jury, wherein the trial court referred to the reason for the rule as stated by Lord Coke "in his 'quaint way' as it is said." He argues that a reference to the "dwelling house of Almighty God" contravenes the Fourteenth Amendment, citing *Torcaso v. Watkins,* 367 U. S. 488, *Engel v. Vitale,* 370 U. S. 421, and *Abington School Dist. v. Schempp,* 374 U. S. 203. We find nothing in the cases cited to prevent counsel, or the Court, from discussing the point at issue or its historical origin, whether this involved a reference

to God or not. The appellant's argument that the "theory that a church is the dwelling house of God * * * cannot be presented in our courts without violating constitutional principles" is, we think wholly without merit.

*Judgment affirmed.*