## JOSEPH McCLAIN *v.* STATE OF MARYLAND

[No. 303, September Term, 1969.]

*Decided August 5, 1970.*

108

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*Benjamin L. Brown* for appellant.

*Richard G. McCauley, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *James B. Dudley, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

Appellant McClain was charged under two separate indictments with being an accessory after the fact to the

felonies of murder and armed robbery. Specifically, the indictments charged that Edward Powers, Thomas McCoy, Albert Matthews, and Dennis Wilson murdered and robbed Joseph Pecora on November 2, 1967 and that appellant "well knowing * * * [the principals had committed the offenses] afterwards * * * was accessory thereto, and he * * * did then and there feloniously receive, harbor, comfort, counsel, maintain and assist [the said felons]."

At a court trial held after the convictions of Powers, Matthews, and McCoy, appellant was found guilty of both offenses and was sentenced to two consecutive ten-year terms of imprisonment.

The evidence at trial showed that Pecora had been shot and robbed at approximately 7:30 p.m. on November 2 and died from his wound at 8:00 p.m.

Powers was the State's principal witness against appellant. He testified that at approximately 5:00 p.m. on November 2, he, Matthews, and McCoy had a discussion about making some money; that they then went looking for appellant and eventually found him in a restaurant; that Matthews went in and spoke to appellant, although he (Powers) didn't know why; that when Matthews came out they (Powers, McCoy and Matthews) went to Powers's house where they met Wilson; that they then began to follow Pecora who was in the neighborhood collecting insurance premiums; that they planned to rob him and to this end he (Powers) was carrying a bayonet in his belt; that Matthews pulled out a .32 automatic and showed him (Powers) how to use it; that he (Powers) took the gun and in the course of robbing Pecora it went off, striking Pecora in the head; that he (Powers) took Pecora's .25 automatic and, together with Matthews and McCoy, he robbed the victim of $279.00 in cash; and that they all then fled and reassembled at McCoy's house about fifteen minutes later, at which time appellant was present. Powers testified that when he arrived at McCoy's house he had both guns in his pocket; that the appellant had learned from McCoy prior to his arrival that he had the

guns; that appellant asked for the guns and that he gave him Pecora's gun to keep for him; and that he gave the .32 automatic to appellant because he understood it was his gun. Powers further testified that appellant asked whether Pecora was dead; that he told appellant that Pecora had been shot in the head, but he (Powers) didn't know whether he was seriously hurt. Thereafter, in one of the bedrooms in McCoy's house, the proceeds of the robbery were divided, in appellant's presence, between Powers, Matthews, McCoy, and Wilson. Each of the four principals then gave appellant four or five dollars because, according to Powers's testimony, "it was his gun." Continuing his testimony, Powers said that appellant

"* * * told us all to stay in the house after twelve o'clock. He left. When he left he took the two guns and left with Dennis Wilson. Told him to stay there. About twelve, I left after they left."

It appears from the record that appellant left McCoy's house at 9:00 p.m. taking the guns with him.

Powers testified that at noon the following day he saw appellant on the street and asked him for Pecora's gun so that he could give it to a friend; that appellant didn't want to give it to him because he said "it was hot"; but that they nevertheless went to appellant's house where appellant gave him the gun.

Appellant was arrested on November 7 and gave a signed statement in which he admitted giving a gun to Matthews in the restaurant. He stated that a few hours later, Matthews returned the gun to him; that thereafter he went to McCoy's house "for no special reason" and saw Powers "counting some money"; that Powers told the others to give him five dollars apiece, after which Powers "showed me the little gun"; that he (appellant) asked Powers if he wanted him "to keep it for you"; that Powers said he did and he (appellant) hid the gun in an empty house; that the next day Powers asked for the return of the gun and he (appellant) gave it to him, after

which he played dice and "lost the money they gave me and the gun that you all say had something to do with the murder." Appellant denied knowing of the murder and robbery of Pecora.

Matthews testified on appellant's behalf, and stated that he obtained a .22 calibre gun from appellant at the restaurant which he gave to Powers, who already had a gun; that after the robbery he took appellant's gun from Powers and returned it to appellant; that appellant did not come to McCoy's house until after the robbery proceeds had been divided; that he (Matthews) there gave appellant money that he owed him; and that the others also gave appellant money at that time. Matthews testified that nothing else was given to appellant in his presence and there was no conversation about the crime.

Also testifying on appellant's behalf were a number of friends who said appellant was playing cards with them from 7:00 p.m. through 11:00 p.m. on the night of the crime. Each of these witnesses testified that on that night they heard over the radio or television that Pecora had been shot and/or killed, and that appellant, being present, also heard the same news reports.

At the conclusion of the evidence, the court stated that it believed the testimony of Powers and that it was corroborated by appellant's own statement in many respects. In finding appellant guilty as an accessory after the fact to the felonies of murder and armed robbery, the court said:

> "* * * This defendant was the perpetrator of the crime and handled the guns that were used in the crime and participated in the distribution of at least some of the money that was stolen from the victim. Without being fully aware of exactly what had happened, particularly when it was at least as of nine P.M. that night, common neighborhood gossip. So it is hard to believe that everybody knew about this in the

neighborhood except the defendant and I say I believe Powers testimony. He was a creditable witness. And not only did he testify with respect to the money and the two revolvers, but he also gave some testimony as to advising Mr. McClain [appellant] gave to them with respect to remaining at the house until midnight when he left at the P.M. and he advised the others to remain there at McCoy's house until midnight. Presumably for their own safety in connection with eluding arrest. * * *"

## I

Appellant claims in effect that the indictments did not clearly charge him with being an accessory after the fact to the felonies of murder and armed robbery because they specified that he was an accessory "thereto," rather than an accessory "to" or "after." He suggests that it is unclear whether he was being charged as an accessory before or after the fact or as a principal. We think the contention frivolous. As drawn, the indictments charged him in separate counts with being an accessory before and an accessory after the fact. Subsequently, the State *nol prossed* the counts charging that he was an accessory before the fact. The counts of the indictments charging him as an accessory after the fact plainly specified that *after* the crimes were committed he was an accessory "thereto" by rendering aid and assistance to the felons. We think the indictments were so framed as to clearly inform the appellant of the charges against him so to enable him to prepare his defense. *Lynch v. State,* 2 Md. App. 546. Moreover, the alleged defects in the indictments were not raised by motion prior to trial as required by Maryland Rule 725b and, being non-jurisdictional in nature, may be deemed waived. *Morrissey v. State,* 9 Md. App. 470.

## II

Nor do we find merit in appellant's claim that the trial court erred in admitting his statement in evidence on the ground that there was no valid waiver of his *Miranda*

rights shown by the evidence. We think there was evidence from which the trier of fact could properly conclude that the full panoply of *Miranda* rights and warnings were given to appellant prior to his interrogation, that he acknowledged separately that he understood each one of them, stated he did not want a lawyer, that he wanted to make a statement, and thereafter signed a waiver. A waiver of *Miranda* rights is seldom more plainly demonstrated. *See McCoy v. State,* 8 Md. App. 127; *Anderson v. State,* 6 Md. App. 688; *Fowler v. State,* 6 Md. App. 651; *Brown v. State,* 3 Md. App. 313.

## III

Appellant contends that the trial court erred in permitting Powers to testify over objection "that appellant had given a gun to Matthews, which gun he [Powers] took from Matthews before he killed Mr. Pecora." The record discloses that Powers testified that he did not know that Matthews obtained a gun from appellant in the restaurant. Powers testified that he originally intended to rob Pecora with a bayonet until he discovered that Matthews had a gun. It was Powers's later testimony, to which objection was made, that he understood that one of the two guns (not Pecora's) which he gave appellant after the crime belonged to him, and that this was the reason that he gave part of the robbery proceeds to him. We do not think this testimony objectionable on hearsay grounds, as urged by appellant. It was not offered to prove that appellant owned the gun but rather to explain, in part at least, why Powers gave the gun and money to the appellant. *See Nixon v. State,* 2 Md. App. 611, citing Wigmore on Evidence (3rd Edition) Section 1766; McCormick on Evidence (1954), Section 228.

## IV

Appellant claims that the trial court erred in its ruling that McCoy was not a compellable witness to testify in his behalf. The record discloses that McCoy was advised by his counsel and invoked his privilege not to testify in

the case because he then had pending an appeal to this court from his own murder and robbery convictions. *See McCoy v. State, supra.* It is well settled that a witness may invoke his privilege against self-incrimination where, as here, the criminal action against him is still pending, as where an appeal is outstanding. *See State v. Johnson,* 287 P. 2d 425 (Idaho); *People v. Den Uyl,* 29 N.W.2d 284 (Mich.); *Knight v. Maybee,* 253 N.Y.S.2d 59 (N. Y.); *Prentice v. Hsu,* 280 F. Supp. 384 (S. D. N. Y.); *Stallings v. State,* 70 S. E. 1015 (Ga.) (motion for new trial pending). *See also Pope v. State,* 7 Md. App. 533; *Poling v. State,* 6 Md. App. 45; *Farmer v. State,* 5 Md. App. 546. *Cf. Knox v. State,* 234 Md. 203 and note, 9 A.L.R.3d 990. And contrary to appellant's further claim, we think the procedure set forth in *Royal v. State,* 236 Md. 443 governing the invoking of the privilege was substantially followed with respect to McCoy's testimony.

## V

Appellant contends that the evidence was not legally sufficient to sustain his convictions for being an accessory after the fact to both the armed robbery and murder of Joseph Pecora. He further contends that in any event he cannot properly be given consecutive sentences for his accessorial guilt because the offenses necessarily merge and consequently justify but one sentence.

Parties to a felony are classified under the common law as principals or accessories. *Agresti v. State,* 2 Md. App. 278. An accessory after the fact does not become connected with the crime until after its commission and he does not therefore become a partaker in the guilt of the principal; rather, he is one who, knowing that a felony has been committed, receives, relieves, or comforts the felon or renders him any other assistance to avoid the consequences of his crime. *Watson v. State,* 208 Md. 210; *Robinson v. State,* 5 Md. App. 723; *West v. State,* 3 Md. App. 662; *Sanders v. State,* 1 Md. App. 630; Clark and Marshall *Crimes* (Sixth Edition), Section 8.06; Wharton's *Criminal Law and Procedure* (Anderson Edition),

Section 112; Perkins on Criminal Law (Second Edition), page 667. All authorities agree that mere failure to disclose the commission of the felony, or to apprehend the felon, or mere approval of the felony is not sufficient to constitute one an accessory after the fact. Generally speaking, as stated in Perkins, *ibid.*, page 668, "any assistance given to one known to be a felon in order to hinder his apprehension, trial or punishment, is sufficient to make a man an accessory after the fact; as that he concealed him in the house, or shut the door against the pursuers, until he should have an opportunity to escape; or took money from him to allow him to escape; or supplied him with money, a horse or other necessities, in order to enable him to escape; or that the principal was in prison, and the jailer was bribed to let him escape; or conveyed instruments to him to enable him to break prison and escape. This and such like assistance to one known to be a felon, would constitute a man accessory after the fact." To like effect is Clark and Marshall, *ibid.*, Section 8.07. That the assistance must be rendered with guilty knowledge that the felony has been completed is, of course, fundamental, Perkins, at page 667, and Clark and Marshall, Section 8.06; but guilty knowledge may be inferred from the circumstances, *Robinson v. State, supra,* at page 728.

The testimony of Powers, which the trial judge stated he believed, taken in conjunction with the autopsy report, and appellant's own incriminating statement, established that Pecora was shot and robbed at approximately 7:30 p.m. on November 2 and died shortly thereafter at 8:00 p.m. The murder weapon was the gun supplied to Powers by Matthews. It was this gun, together with the victim's own gun, that appellant took from Powers when the felons assembled at McCoy's house. Prior to appellant leaving the McCoy house at 9:00 p.m., he gave advice to the felons to guide them in avoiding police detection. After leaving, appellant hid Pecora's gun either in his own house or an empty house, and he kept the murder weapon in his personal possession until losing it in

a dice contest. And the day following the crime, he reluctantly returned Pecora's gun to Powers after advising that the weapon was "hot."

We think the evidence clearly sufficient to show that appellant knew that Pecora had been robbed at gunpoint by Powers and his confederates. He was told that Pecora had been shot in the head. He witnessed the division of the robbery proceeds and even shared in them. We think appellant was shown to be an accessory after the fact to armed robbery.

The evidence of appellant's accessorial guilt to murder is less persuasive but nevertheless legally sufficient. The victim had died prior to the time appellant gave his verbal advice to the felons and removed the guns from McCoy's house. While he knew at that time that Pecora had been shot in the head, such knowledge, without more, is not the equivalent of legally sufficient proof that he knew, prior to his accessoryship, that the felony had been completed by the victim's death. But there was other evidence showing that at 11:00 p.m. appellant heard a news report that Pecora was dead. There is no evidence showing the precise time that appellant hid Pecora's gun, but we think his concealment of it, and his personal possession of the murder gun, after 9:00 p.m. on November 2, was of a continuing character and so constituted assistance to enable the felons to avoid the consequences of their crimes. The evidence showed that on the day following the crime appellant advised Powers against removing the gun from its hiding place, after which, according to his own confession, appellant lost the murder weapon in a crap game. We think this evidence was such that in convicting appellant of being an accessory after the fact to murder the judgment of the trial judge was not clearly erroneous under Maryland Rule 1086.

Unlike an accessory before the fact or a principal to a crime, an accessory after the fact does not become connected with the offense until after its commission; he does not in any way share the guilt for the substantive crime. His accessorial guilt is independent of the guilt

of the felons he thereafter aids and assists. Where the aid rendered to persons who have committed multiple non-merging felonies is indivisible in the sense that, under the particular facts of the case, it is not allocable either in time, place, or manner, between the separate offenses upon which accessorial guilt is founded, we think it improper to impose consecutive sentences for each offense since guilt is based in each instance on the same aid rendered to the same felons.[1] We are unable to conclude on the record before us whether the trial judge, in imposing consecutive ten-year sentences, found from the evidence that the aid rendered by appellant was divisible or indivisible between the non-merging felonies of armed robbery and murder (*see Parker v. State,* 7 Md. App. 167), *i.e.,* part with reference to the armed robbery and part with reference to the murder. If he did so find, and if he intended to impose consecutive ten-year sentences therefor, it is clear to us that he could do so.[2] On the other hand, if he did not so find, or did not so intend, the consecutive ten-year sentences were inappropriate, and one should be vacated, or a general ten-year sentence imposed upon the guilty verdicts.

Finally, appellant urges that by his conduct the prosecutor prejudiced the sentencing process. We have carefully reviewed the contention and find no substance in it.

> *Judgments affirmed, except as to the sentences; sentences vacated and case remanded for sentencing in accordance with this opinion.*

---

1. We held in *Tender v. State,* 2 Md. App. 692, that a person should not be twice punished for the same acts whether the offenses charged by reason of such acts be deemed to be inconsistent, duplicitous, or to have merged.

2. See Maryland Code, Article 27, Section 486 (Sentence not to exceed twenty years authorized for persons convicted of crime of robbery with a deadly weapon "or accessory thereto"). Section 413, authorizing the imposition of life imprisonment or death for persons convicted of first degree murder, "his or her aiders, abettors and counsellors" is not applicable to an accessory after the fact. We think the crime of being an accessory after the fact to murder is a common law offense for which no maximum punishment is prescribed by statute. *See Turner v. State,* 5 Md. App. 332.