604 A.2d 489

STATE of Maryland

v.

**Dana Ashley HAWKINS.**

**No. 82, Sept. Term, 1991.**

Court of Appeals of Maryland.

April 13, 1992.

Annabelle L. Lisic, Asst. Atty. Gen., (J. Joseph Curran, Jr., Atty. Gen., both on brief), for petitioner.

Michael R. Braudes, Asst. Public Defender (Stephen E. Harris, Public Defender, both on brief), Baltimore, for respondent.

Argued before MURPHY, C.J., and ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (Retired), Specially Assigned.

CHARLES E. ORTH, Jr., Judge, Specially Assigned.

This appeal is about murder, and accessory after the fact, and instructions to the jury, and the common law, and the word "polygraph," which, when it crops up in a criminal prosecution, raises a red flag.

The case is briefly stated. A jury in the Circuit Court for Harford County found that Dana Ashley Hawkins was a principal in the murder of Dell Rose Noble, and that the murder was in the first degree as committed in the perpetration of a felony. It also found that she was an accessory after the fact to that murder. She was sentenced to a term of imprisonment for life on each conviction, the sentences to run concurrently. All but 15 years was suspended on the murder conviction and all but 10 years was suspended on the accessory conviction. The sentence on the accessory conviction is illegal, but the illegality plays no part in the resolution of this appeal.[1] The Court of Special Appeals vacated the judgments and remanded the case for a new

---

1. The sentence is illegal because
 the punishment for accessories after the fact must be determined by reference to [Maryland Code (1957, 1976 Repl.Vol., now 1992 Repl. Vol.)] Art. 27, § 626, which limits imprisonment to a maximum sentence of five years.
 *Osborne v. State,* 304 Md. 323, 337, 499 A.2d 170 (1985). Art. 27, § 626 abolished the dispensation from punishment by benefit of clergy. It provides that
 every person convicted of any felony heretofore deemed clergyable shall be sentenced to undergo confinement in the penitentiary for any time not less than eighteen months nor more than five years,

trial. *Hawkins v. State,* 87 Md.App. 195, 589 A.2d 524 (1991). The State filed a petition for the issuance of a writ of certiorari. Hawkins filed a conditional cross-petition. We granted both petitions.

## I

## A

We must first determine Hawkins's cross-petition, for if she prevails, there is no need for us to address the State's petition. Hawkins declaims that the prosecution of her should have been aborted in the middle of the trial. The heart of her contention is that she was denied the fair trial to which she was entitled. *See Crawford v. State,* 285 Md. 431, 451–452, 404 A.2d 244 (1979). The basis of her contention is that during the examination of two of the witnesses against her, the verboten word "polygraph" crept into their testimony.

The red flag was raised when a police officer, Trooper James L. Mitchell, was testifying for the State on direct examination. He was recounting his interrogation of Hawkins in the police station. She gave conflicting versions as to who had killed Noble, changing from one Wayne Pickney to one Brian Bishop as the criminal agent. Mitchell "confronted her" with his belief that he "didn't believe that she was telling the truth about everything." She recanted her latest version and again named Pickney as the killer. Asked by the prosecutor what he then did, Mitchell responded, as shown in the transcript of his testimony:

I went out of my office into Sergeant Bane's office and told him what had happened. He came back into the polygraph suite—(witness slapped hand on witness table)—I'm sorry—came back into my office and said, told the Defendant she was under arrest.

---

, except in those cases where some other specific penalty is prescribed by this Code.

. . . . .

We fully explained in *Osborne* why accessory after the fact was subject to this provision. 304 Md. at 326–338, 499 A.2d 170.

The word "polygraph" next popped up during the State's direct examination of another police officer, Sergeant Paul D. Bane. Bane was describing Hawkins's reaction to her arrest:

> She became very emotional. She began crying. It was necessary for Trooper Mitchell and I to physically carry the Defendant from the area next to the polygraph room to a cell area where she was placed.

At this point, defense counsel heeded the warning of the red flag. He moved for a mistrial. The court held its decision *sub curia* to research the law.

### B

■ "[I]t is universally held that evidence of the defendant's willingness or unwillingness to submit to a lie detector examination is inadmissible." *Kosmas v. State,* 316 Md. 587, 593, 560 A.2d 1137 (1989), and cases therein cited. *See also, Bohnert v. State,* 312 Md. 266, 278, 539 A.2d 657 (1988); *Johnson v. State,* 303 Md. 487, 513, 495 A.2d 1 (1985), *cert. denied,* 474 U.S. 1093, 106 S.Ct. 868, 88 L.Ed.2d 907 (1986); *Guesfeird v. State,* 300 Md. 653, 658, 480 A.2d 800 (1984); *Poole v. State,* 295 Md. 167, 182, 453 A.2d 1218 (1983); *Kelley v. State,* 288 Md. 298, 302, 418 A.2d 217 (1980). "We have resisted exhortations to admit evidence regarding polygraph tests." *Bohnert,* 312 Md. at 278, 539 A.2d 657. The reliability of such tests has not been established to our satisfaction, and we have consistently refused to permit evidence with regard to them. *Kelley,* 288 Md. at 302, 418 A.2d 217. In our system of criminal justice, the trier of fact is the lie detector, and we have been steadfast in disallowing that function to be usurped by a process we have not found to be trustworthy. Mention at a criminal trial of the results of a polygraph test, or the taking of the test, or the willingness or unwillingness to take the test, raises the specter of reversal. In criminal prosecutions, the polygraph test is a pariah; "polygraph" is a dirty word.

■ We have reversed judgments of conviction when mention was made of the taking of a polygraph test or of

the willingness or unwillingness of a defendant to take the test. *See,* for example, *Kosmas,* 316 Md. at 592, 560 A.2d 1137 and *Guesfeird,* 300 Md. at 658, 480 A.2d 800. Despite its status as a pariah, however, not all references to polygraph tests warrant reversal. *See,* for example, *Johnson,* 303 Md. at 513–515, 495 A.2d 1; *Poole,* 295 Md. at 182–183, 453 A.2d 1218; *Lusby v. State,* 217 Md. 191, 194–197, 141 A.2d 893 (1958). The question is one of prejudice to the defendant. *See Kosmas,* 316 Md. at 594–595, 560 A.2d 1137; *Guesfeird,* 300 Md. at 659, 480 A.2d 800. We note that the fact that the reference to a polygraph test is inadvertent does not alone insure that it is not prejudicial. *Id.* at 660, 480 A.2d 800.

## C

 After holding his decision on the motion *sub curia,* the judge denied it at the close of all the evidence. In so doing, he put the word "polygraph" in the context in which it was mentioned. He observed that when the word passed Trooper Mitchell's lips, the officer "paused in giving his testimony and reacted in a very unusual, shall we say, fashion." The judge noted that "[o]ne of the members of the court stated that he looked like he had been electrocuted." On the other hand, when Sergeant Bane used the word, he "did not react at all." Perhaps "a very, very slight pause, but even that is questionable." The judge concluded, "Anyway, there was nothing in his demeanor or course of his testimony to indicate there was any significance to that word." The judge stated his belief that

the Defense's motion is based on the combination of the two factors, the fact that Trooper Mitchell blurted it out, and Trooper Bane may have accentuated what Trooper Mitchell mentioned that they were in the vicinity of the polygraph room. . . .

The judge concluded:

Considering the totality of the circumstances in this case, I believe there has been no irrefutable prejudice to

the Defendant by the combination of the two references. The one that troubles me the most is by Trooper Mitchell, but it was very oblique. It was not clear to the jury, I believe, what he was referring to. The first remark was made a considerable time back, before last week, whenever. So that I believe that whatever "damage," may have been done by that reference did not prejudice the Defendant's case, and I don't think anything that Trooper Bane [said] in any way enhanced any damage that may have been done. So even taking the combination of the two references together, I don't think there's been any prejudice to the Defendant and I would deny the motion.

The trial judge characterized the utterances of the word "polygraph" as "blurts," and we are in full accord with that view. We are content with the finding of the trial judge, not skeptical as we were in *Kosmas, see* 316 Md. at 596, 560 A.2d 1137, that each officer's mention of the word "polygraph" was inadvertent, uttered abruptly and impulsively, with no nefarious intent. Our discussion of the applicable principles is in that context.

"Ordinarily, the decision whether to grant a motion for a mistrial rests in the discretion of the trial judge." *Kosmas,* 316 Md. at 594, 560 A.2d 1137, citing *Wilhelm v. State,* 272 Md. 404, 429, 326 A.2d 707 (1974) and *Lusby v. State,* 217 Md. at 195, 141 A.2d 893. *See Bailey v. State,* 303 Md. 650, 663, 496 A.2d 665 (1985). "[O]ur review is limited to whether there has been an abuse of discretion in denying the motion." *White v. State,* 300 Md. 719, 737, 481 A.2d 201 (1984). The general rule, well settled in Maryland, is that the trial judge has wide discretion in the conduct of a trial and that the exercise of discretion will not be disturbed unless it has been clearly abused. *Crawford v. State,* 285 Md. at 451, 404 A.2d 244. "The principle that the overall direction of the trial is within the sound discretion of the trial judge encompasses the admission of evidence." *Id.*

The assumed proposition that judges are men of discernment, learned and experienced in the law and capable of

evaluating the materiality of evidence, lies at the very core of our judicial system.

*State v. Babb,* 258 Md. 547, 550, 267 A.2d 190 (1970).

The fundamental rationale in leaving the matter of prejudice *vel non* to the sound discretion of the trial judge is that the judge is in the best position to evaluate it. The judge is physically on the scene, able to observe matters not usually reflected in a cold record. The judge is able to ascertain the demeanor of the witnesses and to note the reaction of the jurors and counsel to inadmissible matters. That is to say, the judge has his finger on the pulse of the trial.

Supporting the denial of the motion by the judge here was that the references to "polygraph" were not solicited or pursued by the prosecutor. All that the officers voiced, without embellishment, was the taboo word "polygraph". Neither officer stated that Hawkins had taken a polygraph test or had expressed her willingness or unwillingness to take it. The officers did not even indicate that Hawkins had been placed in a room containing a polygraph machine. Mitchell said she was in "the polygraph suite," and Bane said she was taken "from the area next to the polygraph room." That the police interrogated Hawkins in the "polygraph suite" or in the area next to the polygraph room does not necessarily suggest that she was subjected to a polygraph test.

In Hawkins's conditional cross-petition, she presented the question:

> Did the trial court err in denying a motion for mistrial when two experienced police officers testified in a manner that permitted the jury to infer that Hawkins had taken and failed a polygraph test?

The question was presented before the Court of Special Appeals but that court had no need to reach it. *Hawkins,* 87 Md. at 197, 589 A.2d 524.

We have no quarrel with the trial judge's conclusion that Hawkins was not prejudiced. In the light of the lack of prejudice, there was no abuse of discretion in the denial

of the motion for a mistrial. Absent an abuse of discretion, there was no error in the judge's exercise of his discretion. There being no error, the judge's action was proper. Hawkins was entitled to a fair, not a perfect, trial. *Mack v. State*, 300 Md. 583, 598, 479 A.2d 1344 (1984). We hold that in the particular circumstances of this case, she received the fair trial to which she was entitled.

## II

Our determination that the trial judge properly refused to take the case from the jury paves the way for our review of the judgment of the Court of Special Appeals requested by the State in its petition for the issuance of a writ of certiorari. The State presented the question:

Where a jury is not instructed that an accessory after the fact may not be present for the commission of the offense, and the jury finds the defendant guilty of both the substantive crime and accessoryship, is the appropriate remedy to vacate only the accessoryship conviction?

We first make clear that an instruction that "an accessory after the fact may not be present for the commission of the offense" simply does not reflect a correct statement of the law.[2] Clearly, a person may be present during the commission of a felony and nonetheless be an accessory after the fact. If a person, although present at the time of the commission of a felony, took no action sufficient to constitute that person a principal in the first or second degree, that person would be, nevertheless, an accessory after the fact if subsequently that person assisted the felon with the intent to hinder or prevent the felon's

---

**2.** It may be that the State was misled by the suggested instruction on accessory after the fact contained in Aaronson, *Maryland Criminal Jury Instructions and Commentary*, § 4.03 (2d ed. 1988). The instruction includes the assertion:

In order for one to be an accessory after the fact, it is essential that he was absent at the time the crime was committed.

The statement was repeated in the comment to the section without citation of authority to support it. The assertion is incorrect.

detection, arrest, trial, or punishment. *1 Wharton's Criminal Law,* § 33 (C.E. Torcia, 14th ed. 1978). Wharton observes:

Although an accessory after the fact is ordinarily not present when the felony was committed, his absence is not required. Thus, a person who was present when a felony was committed, but in no way aided or abetted its commission—and hence did not qualify as a principal in the second degree—may become an accessory after the fact by rendering aid to the felon thereafter in order to facilitate his escape.

*Id.*

## A

 The indictment on which Hawkins was tried presented in the first count that she "willfully and of deliberately premeditated malice aforethought did kill and murder" Dell Rose Noble. When a person embraces a misdemeanor, that person is a principal as to that crime, no matter what the nature of the involvement. In the field of felony, however, the common law divides guilty parties into principals and accessories. Principals are classified as in the first degree (perpetrators), or in the second degree (abettors—in times past, as accessories at the fact). Accessories are classified as before the fact (inciters) or after the fact (criminal protectors). *State v. Ward,* 284 Md. 189, 196, 396 A.2d 1041 (1978), *appeal after remand,* 290 Md. 76, 427 A.2d 1008 (1981).

A *principal in the first degree* is one who actually commits a crime, either by his own hand, or by an inanimate agency, or by an innocent human agent. A *principal in the second degree* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof in his presence, either actual or constructive. An *accessory before the fact* is one who is guilty of felony by reason of having aided, counseled, commanded or encouraged the commission thereof, without having been present either actually

or constructively at the moment of perpetration. An *accessory after the fact* is one who, with knowledge of the other's guilt, renders assistance to a felon in the effort to hinder his detection, arrest, trial or punishment. *Id.* 284 Md. at 197, 396 A.2d 1041. *See* cases and authorities cited therein. *See* also *Sheppard v. State*, 312 Md. 118, 121–123, 538 A.2d 773 (1988); *Watson v. State*, 208 Md. 210, 218–219, 117 A.2d 549 (1955).

Four verdicts were possible on the murder charge: guilty of murder in the first degree, either as premeditated or as perpetrated in the commission of a felony; or guilty of murder in the second degree; or not guilty of murder but guilty of manslaughter; or not guilty. *See* Maryland Code (1957, 1992 Repl.Vol.) Art. 27, § 387 (manslaughter); § 407 (first degree murder); § 410 (felony murder); § 411 (second degree murder); § 616 (indictment for murder or manslaughter); *Bruce v. State*, 317 Md. 642, 645, 566 A.2d 103 (1989); *Hook v. State*, 315 Md. 25, 27–28, 553 A.2d 233 (1989); *State v. Faulkner*, 301 Md. 482, 485, 483 A.2d 759 (1984); *State v. Ward*, 284 Md. at 195, 396 A.2d 1041. The judge in his instructions traversed the entire area of the law pertaining to the crime of murder. He spoke to first degree murder as premeditated or committed in the perpetration of a felony. He defined a principal in the first degree and a principal in the second degree. He explained murder in the second degree. The parties do not dispute the propriety of this instruction.

B

The eighth count of the indictment presented that Hawkins

did willfully, unlawfully, and knowingly aid, harbor and assist Wayne Pickney and others, after the commission of a felony, to wit: murder to hinder his apprehension, detection, trial or punishment and did so with full knowledge of said crimes. . . .

If proved, this charge would make Hawkins an accessory after the fact.

When the English colonists crossed the sea to America they brought with them the common law of England, and that law was generally recognized in the rule of the colonies by Great Britain. It came to pass, however, that the colonists considered themselves to be thirteen separate "States," and on 4 July 1776, the thirteen states, through fifty-six representatives of the "UNITED STATES OF AMERICA," sorely aggrieved by the "long train of abuses and usurpations" suffered under British Rule, did "in the Name, and by the authority of the good People of these Colonies, solemnly publish and declare"

That these United Colonies are, and of right ought to be FREE AND INDEPENDENT STATES; that they are Absolved from all Allegiance to the British Crown, and that all political connection between them and the State of Great Britain, is and ought to be totally dissolved; and that as Free and Independent States, they have full Power to levy War, conclude Peace, contract Alliances, establish Commerce, and to do all other Acts and Things which Independent States may of right do. And for the support of this Declaration, with a firm reliance on the protection of Divine Providence, we mutually pledge to each other our Lives, our Fortunes and our sacred Honor.

Two days later, the People of Maryland declared their independence from Great Britain.

The People of the United Colonies had to fight for the independence they were constrained to declare. They won, but the pledge made by their representatives on their behalf was honored. Many people lost their lives; some lost their fortunes; most were true to their sacred honor. It was by the fact of the victory, however, that the rights which had been declared by Maryland and a constitution which it had adopted shortly after it had proclaimed its independence, remained viable.

On 14 August 1776 a convention met at Annapolis to establish a form of government for Maryland, formerly a

proprietary province. The delegates labored for three months and brought forth a Constitution and a Declaration of Rights. They were not submitted to the People, but went into effect on 11 November 1776 by agreement of the delegates.

Paragraph III of the Maryland Declaration of Rights adopted in 1776 included the proclamation "That the inhabitants of Maryland are entitled to the common law of England...." The entitlement appeared in the Declaration of Rights in each succeeding Constitution—1851 in Article 3; 1864 in Article 4; and 1867, in effect today, in Article 5. The statement regarding the common law, this Court early held, had reference to the

> common law in mass, as it existed here, either potentially, or practically, and as it prevailed in England at the time, except such portions of it as are inconsistent with the spirit of that instrument, and the nature of our new political institutions.

*State v. Buchanan*, 5 H. & J. 317, 358 (1821). *See McGraw v. State*, 234 Md. 273, 275–276, 199 A.2d 229, *cert. denied*, 379 U.S. 862, 85 S.Ct. 124, 13 L.Ed.2d 64 (1964).

With the common law of England came the doctrine of accessoryship applicable to felonies. Maryland is one of the few, if not the only state which has retained this doctrine with respect to accessory after the fact in virtually the same form as it existed at the time of William Blackstone in the 18th century, and it represents the law of Maryland at the present time. *Osborne v. State*, 304 Md. 323, 326 n. 2, 499 A.2d 170 (1985) and cases cited therein.

Blackstone, speaking "of Principals and Accessories" in his discussion of "Public Wrongs," said:

> An accessory *after* a fact may be, where a person, knowing a felony to have been committed, receives, relieves, comforts, or assists a felon.

4 W. Blackstone, *Commentaries on the Law of England*, *37 (1825). *See Sheppard v. State*, 312 Md. at 122 n. 2, 538 A.2d 773; *Osborne v. State*, 304 Md. at 326–327, 499 A.2d

170, *Watson v. State*, 208 Md. at 217–219, 117 A.2d 549; *Cooper v. State*, 44 Md.App. 59, 65–65, 407 A.2d 756 (1979); *McClain v. State*, 10 Md.App. 106, 114–115, 268 A.2d 572 (1970); *Robinson, Austin, and Lothes v. State*, 5 Md.App. 723, 728, 249 A.2d 504 (1969); Perkins and Boyce, *Criminal Law*, 748 (3d ed. 1982); Clark and Marshall, *A Treatise on the Law of Crimes*, § 8.06 (Wingersky rev. 1958); 2 LaFave and Scott, *Substantive Criminal Law*, § 6.9 (1986); L. Hochheimer, *The Law of Crimes and Criminal Procedure*, § 26 (2d ed. 1904); 1 *Bishop on Criminal Law*, § 692 (9th ed. 1923); 1 *Wharton's Criminal Law*, § 33 (C.E. Torcia, 14th ed. 1978); R. Gilbert and C. Moylan, *Maryland Criminal Law: Practice and Procedure*, § 21.4-2 (1983); J. Miller, *Criminal Law*, § 77 (1934). All of the above give three elements or requisites for the crime of accessory after the fact:

1) a felony must have been committed by another prior to the act of accessoryship;

2) the accessory must know of the commission of the felony;

3) the accessory must do some act personally in his effort to assist the felon to avoid the consequences of his crime.

The legal scholars interpret the common law as requiring a fourth element or requisite:

The accessory must not himself be guilty of the substantive felony as a principal.

Perkins and Boyce at 748–749; LaFave and Scott at § 6.9; Gilbert and Moylan at 21.4-2; 1 H.R. Brill, *Cyclopedia of Criminal Law*, § 243 (1922); and 1 E.M. McClain, *A Treatise on the Criminal Law*, § 209 (1897) flat out say so. We recognized the element in *Sheppard*, 312 Md. at 122, n. 2, 538 A.2d 773, and in *Osborne*, 304 Md. at 327 n. 3, 499 A.2d 170. We quoted Bishop §§ 692–693 in *Watson*, 208 Md. at 218–219, 117 A.2d 549. Although Bishop does not expressly so state, it is apparent from its discussion that the accessory after the fact may not be a principal in the substantive felony. Bishop noted in § 696 at 500, "We should not

confound the guilt of him who commits a substantive crime, with his [guilt] who becomes an accessory after the fact." The Court of Special Appeals expressly set out the element in *Cooper*, 44 Md.App. at 65, 407 A.2d 756, and it is implicit in its *McClain*, 10 Md.App. 106, 268 A.2d 572. The court observed, at 114:

> An accessory after the fact does not become connected with the crime until after its commission and he does not therefore become a partaker in the guilt of the principal....

None of the authorities which do not expressly set out the element, suggest or indicate that a person may be both a principal in the substantive felony and an accessory after the fact to that felony. We are satisfied that an element of the common law crime of accessory after the fact is that the accessory must not himself be guilty of the substantive felony as a principal.

### III

### A

In our review, we enjoy, as did the Court of Special Appeals, two givens. The first relates to the facts. It is that the evidence was sufficient to support both verdicts. Therefore, like the intermediate appellate court, "we will forgo any review of the record for sufficiency of the evidence to sustain either of the two convicted counts and assume, as the parties apparently concede, that it is sufficient." *Hawkins*, 87 Md.App. at 198, 589 A.2d 524.

The second given relates to the law. Because an accessory after the fact may not be a principal in the substantive felony, a verdict of guilty of the murder and a verdict of guilty of accessory after the fact are inconsistent. The Court of Special Appeals accepted as a settled nonconstitutional common law principle in this State, that ordinarily "convictions on counts of first degree felony murder and accessory after the fact to [that] murder are irreconcilably inconsistent...." *Id.* at 199–200, 589 A.2d 524. The Court

of Special Appeals pointed out, "No argument is made that the convictions are not inconsistent; the parties have, quite properly, all but conceded that they are." *Hawkins,* 87 Md.App. at 200, 589 A.2d 524. We agree that the verdicts were inconsistent. *See Hardesty v. State,* 223 Md. 559, 562, 165 A.2d 761 (1960); *Bell v. State,* 220 Md. 75, 81, 150 A.2d 908 (1959); *Heinze v. State,* 184 Md. 613, 619–621, 42 A.2d 128 (1945); *Jenkins v. State,* 59 Md.App. 612, 621–622, 477 A.2d 791 (1984), *modified on other grounds,* 307 Md. 501, 515 A.2d 465 (1986).

The intermediate appellate court, armed with these two givens, based its decision on the inconsistency of the verdicts. It declared that it was "powerless to 'cut the knot [caused by the inconsistent verdicts] by directing a verdict of not guilty upon either [offense].'" *Hawkins,* 87 Md. App. at 204, 589 A.2d 524, citing *Heinze,* 184 Md. at 619, 42 A.2d 128, quoting *Commonwealth v. Lowrey,* 158 Mass. 18, 32 N.E. 940, *aff'd,* 159 Mass. 62, 34 N.E. 81 (1893). "Only the trier of fact," *Hawkins* opined, "may select which of the two inconsistent offenses was committed, the evidence being sufficient to sustain a conviction as to either." 87 Md.App. at 204, 589 A.2d 524. It returned the case to square one by vacating both judgments with a remand to the circuit court for a new trial. *Id.* at 204–205, 589 A.2d 524. We are not of that mind. We are satisfied that the gnarl may be untangled short of the ultimate action resorted to by the intermediate appellate court. We travel a different path than did the Court of Special Appeals to reach the resolution of this appeal.

### B

■ Before us, Hawkins recognizes, as she did below, that the verdicts are inconsistent. We agree with her assertion that

[t]he inconsistency between murder and accessory after the fact to murder lies in the fact that one cannot simultaneously be both "the person who committed the crime" and someone other than that person.

But we leave her when she states that this can be gleaned from the judge's instruction on accessory after the fact. We simply cannot read the instruction as she would have it. We do not think that it was adequate to inform a juror that a person may not be a murderer and an accessory after the fact to that murder. As we shall see, we are apart from Hawkins also in her postulation that the inconsistency caused her such prejudice as to warrant a reversal of both judgments and the award of a new trial.[3]

On the heels of the murder instruction, the trial judge explained the law pertaining to the crime of accessory after the fact. He said:

> An accessory after the fact is a person who, with knowledge that a crime has been committed, assists the offender with the intent to hinder or prevent the offender's arrest, prosecution, or trial. In order to convict the defendant, the State must prove: one, that the crime of murder has been committed; two, that the defendant knew that the crime of murder had been committed; three, that the defendant gave assistance to the person who committed the crime; and four, that the defendant did so with the intent to hinder or prevent that person's arrest, prosecution or trial.

This instruction is a verbatim of the instruction suggested by the Maryland State Bar Association, Committee on Criminal Pattern Jury Instructions, MPJI–CR 6:02 (1987). The instruction was correct as far as it went. If the jury applied this instruction as given, it could render a verdict of guilty on each of the murder charge and the accessory charge which would be factually correct. Such verdicts would be in accord with the instructions given and not

---

**3.** It appears that Hawkins urged in the Court of Special Appeals, that the accessoryship conviction be merged into the conviction for first degree murder. *Hawkins v. State,* 87 Md.App. 195, 203, 589 A.2d 524 (1991). The intermediate appellate court noted that "[t]he State, in effect, joins in that request...." The court determined, correctly, that "the offenses simply do not merge...." *Id.* In this Court, neither of the parties call upon the merger doctrine.

contrary to the evidence.. But, even though factually sound, the law, in the circumstances here, as we have seen, will not permit both verdicts to stand because they are prejudicially inconsistent. Therefore, the instruction was defective when considered in the light of the interplay between the verdict of guilty of felony murder and the verdict of guilty of accessory after the fact. Thus, the resolution of this appeal orbits the crime of accessory after the fact and focuses on the jury instructions given by the trial court with respect to that crime.

The instructions of the trial judge were reduced to writing and presented to the jury. The judge appended a verdict sheet to the instructions. He told the jury:

There is a verdict sheet that I have attached to the jury instructions, which I believe will give you the guidance that you need for your decision.

The verdict sheet called for the jury to indicate by a check mark its decisions with respect to the various charges submitted to it. The verdict sheet led off with the crime of murder. It read:

First Degree Murder

Guilty _____

Not Guilty _____

The jury checked "Guilty." The verdict sheet then instructed:

If you find the Defendant guilty of First Degree Murder you need not consider the offense of Second Degree Murder.

If you find the Defendant not guilty of First Degree Murder, you may consider the offense of Second Degree Murder.

The sheet continued:

If you find the Defendant guilty of First Degree Murder do you find it was:

Premeditated Murder _____

Felony Murder _____

The jury checked "Felony Murder." There followed:

Second Degree Murder

Guilty _____

Not Guilty _____

Pursuant to the instructions, the jury left this unchecked. The last item on the sheet was:

Accessory after the fact to Murder

Guilty _____

Not Guilty _____

The jury checked "Guilty."

The defect in the instructions on accessoryship was the judge's failure to instruct the jury that if it found Hawkins guilty of murder, it should not reach the question whether she was guilty of the offense of accessory after the fact. What should have been included in the instruction was a caution similar to that spelled out in the verdict sheet as to murder. The jury should have been informed to the effect:

If you find the Defendant guilty of first degree murder or second degree murder you should not consider the offense of accessory after the fact.

If you find the Defendant not guilty of first degree murder and second degree murder, you should consider the offense of accessory after the fact.

It would have been better for the judge to have so warned the jury in his instructions from the bench, but in any event such a caution should have been included in the verdict sheet as it was with respect to murder.[4]

_____

4. We observe that the erroneous instruction would have been cured had the judge not accepted the jury's verdicts convicting Hawkins of both felony murder and accessory after the fact. As we noted in *Heinze v. State,* 184 Md. 613, 617, 42 A.2d 128 (1945):

It is a generally accepted rule that if the jury should return a verdict which is defective in form or substance, it should not be accepted by the trial judge. It is essential for the prompt and efficient administration of justice to prevent defective verdicts from being entered upon the records of the court as well as to ascertain the real intention of the jury in their finding. Where a verdict is ambigu-

## C

At this point in our review, the posture of the case is that

1) the evidence was sufficient to sustain a conviction on both murder and accessory after the fact;

2) the verdicts of guilty on those offenses were legally inconsistent and both cannot stand;

3) the instructions on murder were correct;

4) the instructions on accessory after the fact were defective.

In the light of those concessions and determinations, the appeal boils down to the question, "What must be done?"

The key to the resolution of this appeal is "prejudice." It is clear that Hawkins suffered prejudice by reason of her conviction on the count of accessory after the fact; the guilty verdict subjected her to punishment. And, beyond a reasonable doubt, the erroneous instruction contributed to that verdict, and, therefore, was not harmless. *See Dorsey v. State*, 276 Md. 638, 350 A.2d 665 (1976). The decisive factor, however, is that the prejudice devolved only on the verdict of guilty of the crime of accessory after the fact. The prejudice did not reach the murder verdict; that verdict was proper in all respects and remained unsullied. All things considered, we do not believe that the defective instruction influenced the jury one whit in its decision that Hawkins was guilty of felony murder. We note that the verdict sheet called for the determination of the murder charge first and the accessory after the fact charge last.

Under the law of this State, where there is a conviction for only one offense and an erroneous instruction on that offense, the judgment is ordinarily vacated and the case remanded for a new trial. *See e.g. Hammond v.*

ous, inconsistent, unresponsive, or otherwise defective, it is the duty of the trial judge to call the jury's attention to the defect and to direct them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation.

*State,* 322 Md. 451, 464, 588 A.2d 345 (1991) (failure to advise of permanent nature of injury for assault with intent to disable); *Brooks v. State,* 68 Md.App. 604, 614, 515 A.2d 225 (1986), *cert. denied,* 308 Md. 382, 519 A.2d 1283 (1987) (erroneous instruction on malicious destruction of property). However, where there are multiple offenses involved, as is the case here, the remedy for an error in the instructions on one of the offenses depends upon the degree to which the erroneous instruction taints each individual conviction. Compare *Hook v. State,* 315 Md. at 42, 553 A.2d 233 (failure to instruct on second degree murder may have tainted all other verdicts, thus requiring remand for a new trial), with *Brooks v. State,* 314 Md. 585, 601, 552 A.2d 872 (1989) (new trial not necessary when jury found defendant guilty of properly instructed lesser offense). *Cf. West v. State,* 312 Md. 197, 213, 539 A.2d 231 (1988) (no grounds for new trial when evidence insufficient on some counts but sufficient as to remaining counts).

Inasmuch as the defective instruction despoiled only the accessory after the fact verdict and left the murder verdict chaste and pure, there is no good cause to wash out the judgment entered on the murder conviction. It is only the judgment entered on the accessory after the fact conviction which must be vacated. We so hold.

### IV

Criminal justice travels a two-way street; the interests of society, no less than the interests of a defendant, are to be nurtured. Our resolution of this appeal is in accord with the present common law of Maryland with respect to the crime of accessory after the fact. We are concerned, however about the impact our holding will have on future prosecutions for the commission of that offense.

We are not compelled, nor are we satisfied, to accept the common law as a carpe diem. The common law is not cast in concrete; it is subject to change by legislative enactment and by judicial decision. *Evans v. State,* 301 Md. 45, 57,

481 A.2d 1135 (1984), *cert. denied, sub nom Grandison v. Maryland,* 470 U.S. 1034, 105 S.Ct. 1411, 84 L.Ed.2d 795 (1985). *Pope v. State,* 284 Md. 309, 341, 396 A.2d 1054 (1979); *State v. Ward,* 284 Md. at 191 n. 2, 396 A.2d 1041 and cases therein cited. This Court has not been reluctant to change the common law, and we have manifested our willingness to do so when we have found that a rule was not in the best interest of justice or that public policy called for a change. *See Jones v. State,* 302 Md. 153, 161, 486 A.2d 184 (1985).

### A

Our opinions announcing changes in the common law have covered a wide area. We give a sampling of our more recent decisions, starting with *State v. McKay,* 280 Md. 558, 568–572, 375 A.2d 228 (1977) (permitted waiver of unanimity jury trial in criminal cases). There followed *Harris v. Jones,* 281 Md. 560, 564–566, 380 A.2d 611 (1977) (recognized the tort of intentional infliction of emotional distress); *Lusby v. Lusby,* 283 Md. 334, 357–358, 390 A.2d 77 (1978) (abrogated defense of interspousal immunity for outrageous conduct); *Pope v. State,* 284 Md. at 333–352, 396 A.2d 1054 (jettisoned misprision of felony as a chargeable offense in Maryland); *Adler v. American Standard Corp.,* 291 Md. 31, 35–47, 432 A.2d 464 (1981) (recognized tort of wrongful discharge from employment); *Moxley v. Acker,* 294 Md. 47, 49–53, 447 A.2d 857 (1982) (deleted force as a required element of forcible detainer); *Boblitz v. Boblitz,* 296 Md. 242, 275, 462 A.2d 506 (1983) (renounced the common law doctrine of spousal immunity);[5] *Evans v. State,* 301 Md. at 48–58, 481 A.2d 1135 (modified the common law rule prohibiting successive criminal prosecutions for the same offense by different sovereigns); *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 144–159, 497 A.2d 1143 (1985) (created cause of action for strict liability against

---

**5.** In *Frye v. Frye,* 305 Md. 542, 567, 505 A.2d 826 (1986), we refused to renounce the common law doctrine of parent-child immunity.

manufacturers of "Saturday Night Special" revolvers); *Harris v. State,* 306 Md. 344, 353–359, 509 A.2d 120 (1986) (acknowledged changes in common law right of allocution). We have changed some aspects of the common law of accessoryship. *See State v. Ward,* 284 Md. at 207, 396 A.2d 1041 (there may be an accessory before the fact to murder in the second degree); *Lewis v. State,* 285 Md. 705, 708–716, 404 A.2d 1073 (1979) (accessory before the fact may be tried before the principal); *Jones v. State,* 302 Md. at 159–161, 486 A.2d 184, (accessory before the fact may be convicted of a greater crime than the principal in certain circumstances). Our holding today prompts us to look again at the common law rules with respect to the crime of accessory after the fact.

## B

Our concern stems from the common law requisite that an accessory after the fact may not be a principal in the substantive felony. We illustrate the reason for our concern by a hypothetical with this scenario. John Doe is charged with the commission of a felony and with being an accessory after the fact to that felony. The jury determines that he is guilty of the substantive felony. Under our holding today, it does not return a verdict on the accessory offense. On appeal, the appellate court, called upon to review the sufficiency of the evidence, finds that it was insufficient to sustain the conviction, and reverses the judgment for that reason. The problem is that if there is no verdict on the accessory after the fact charge, the appellate court cannot simply remand for sentencing.

## C

As we have seen under the common law rule which states that an element or requisite of the crime of accessory after the fact is that the accessory may not be a principal in the substantive felony. Absent that element, the verdicts that Hawkins was guilty of felony murder and accessory after the fact in that murder would not only be factually correct,

but also legally permissible. In other words, the verdicts would not be inconsistent.

■■■ As "we have not hesitated to change the common law to permit ... remedies where we have concluded that such course was justified," *Kelley,* 304 Md. at 140, 497 A.2d 1143, the remedy here is to forestall the problem by abrogating the troublesome element. We conclude that such a course is justified here. We declare, as a matter of public policy, that, henceforth, in the interest of justice, it is no longer an element of the crime of accessory after the fact that the accessory may not be a principal in either degree, in the commission of the substantive felony.

■■■ This change in the common law, however, does not completely satisfy the interests of justice. Even though it furthers society's interest, it, at the same time, impinges adversely on a defendant's entitlement to justice. We, therefore, conclude that although a verdict of guilty of being an accessory after the fact may stand with a verdict of guilty of the substantive offense when the evidence is sufficient to sustain them, a separate sentence may not be imposed on the conviction of the crime of accessory after the fact. This prohibition is not a matter of merger under the required evidence test. Clearly, the required evidence test is not met with respect to a substantive felony and accessory after the fact. *See Brooks v. State,* 284 Md. 416, 419–423, 397 A.2d 596 (1979). *See also* note 3 *supra.* But the rationale under which the imposition of separate sentences is ordinarily barred when a conviction of one offense merges under the common law of Maryland into the conviction of another offense, lends support to the prohibition we announce today. The prohibition in both instances boils down to a matter of public policy in accord with fundamental fairness.[6]

---

6. "[W]e have consistently recognized that common law principles should not be changed contrary to the public policy of the State set forth by the General Assembly of Maryland." *Kelley v. R.G. Industries, Inc.,* 304 Md. 124, 141, 497 A.2d 1143 (1985). The changes in

By our holdings in part IV–C of this opinion, a defendant may be convicted of both the substantive felony and of being an accessory after the fact to that felony. But there may be only one judgment, that entered on the conviction of the substantive felony, the greater offense. There may not be a separate sentence on each conviction. So the conviction of the crime of accessory after the fact is not reduced to judgment by the imposition of punishment. If the judgment entered on the conviction of the substantive felony is reversed on appeal for the reason that the evidence was not sufficient to sustain the conviction on that offense, thus precluding a retrial thereon, the defendant does not walk away unscathed. He still stands convicted on the accessory charge, and the case may be remanded to the trial court for the imposition of a sentence on that charge, not to exceed five years, however.

We have determined this appeal by applying the existing common law of Maryland with respect to the crime of accessory after the fact. We have changed that law, however, for prospective application in the prosecution of that offense. In the light of the law to which this appeal is subject,

THE JUDGMENT OF THE COURT OF SPECIAL APPEALS IS REVERSED;

CASE REMANDED TO THAT COURT WITH DIRECTION TO AFFIRM THE JUDGMENT ENTERED BY THE CIRCUIT COURT FOR HARFORD COUNTY ON THE MURDER CONVICTION AND TO VACATE THE JUDGMENT ENTERED ON THE ACCESSORY AFTER THE FACT CONVICTION;

COSTS IN THE COURT OF SPECIAL APPEALS AND IN THIS COURT TO BE PAID ONE–HALF BY HAWKINS AND ONE–HALF BY HARFORD COUNTY.

---

common law principles we make herein are not contrary to any public policy set forth by the General Assembly of Maryland.